Doug ERDMAN, W & E Buying and Leasing, a Wisconsin general partnership, and Wellington Place, Inc., a Wisconsin corporation, Plaintiffs–Appellants,

v.

CITY OF FORT ATKINSON, a municipal corporation, Defendant–Appellee.

No. 95–3484.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1996.

Decided May 24, 1996.

Order Denying Rehearing and Suggestion for Rehearing En Banc June 25, 1996.

Cordelia S. Munroe, S. Todd Farris, Friebert, Finerty & St. John, Milwaukee, WI, Thomas W. St. John (argued), Milwaukee, WI, for plaintiffs-appellants.

Robert G. Wixson (argued), Kim I. Moermond, Winner, Wixson & Pernitz, Madison, WI, for defendant-appellee.

Before COFFEY, EASTERBROOK, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This case, seeking damages under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3631, (FHAA) ultimately turns on the actions of the plaintiffs and our interpretation of the phrase "equal opportunity to use and enjoy a dwelling."

Doug Erdman and two of his entities—W & E Buying and Leasing and Wellington Place, Inc.—(we will refer to all three as Erdman) appeal from an order granting summary judgment for the City of Fort Atkinson and from the denial of a motion to reconsider that order. Erdman contends that the City violated the FHAA when it refused to give him a conditional use permit to construct a community-based residential facility to house elderly, handicapped individuals. He asserts that the denial constitutes discrimination and a failure to make reasonable accommodations in city land use policies to afford the elderly handicapped equal housing opportunities.

Judge Barbara Crabb of the district court found that the City, in denying the permit request, did not run afoul of the FHAA. The denial of a single conditional use application, the judge said, does not "demonstrate that the elderly handicapped have received unequal housing opportunities in the city of Fort Atkinson." There are, she found, other housing units for the elderly handicapped in the city. After judgment was entered, a Rule 60(b) motion for relief from judgment was filed and denied. Erdman contends that the judge, by placing on him the initial burden of showing unequal housing opportunities in the city, in effect, added an element to the statute.

We review a grant of summary judgment *de novo*, applying the same stan-dards as the district court and viewing the record and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995). We will affirm the entry of summary judgment if there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The denial of a Rule 60(b) motion is reviewed for an abuse of discretion by the district judge.

Before getting to the facts, we note a bit of a problem here as Erdman did not comply with the district court's summary judgment procedures, namely, responding specifically to the City's proposed findings of fact and proposing findings of his own. For this reason, Judge Crabb took as undisputed the facts proposed by the City. She did, however, accept as undisputed proposed facts in Erdman's brief for which he provided citations from the record and to which the City did not object. But she did not consider proposed facts that were not supported by a reference or that were based on inadmissible evidence. This she was entitled to do, as we noted 6 years ago in a case involving her treatment of a similar situation. *Tatalovich v. City of Superior*, 904 F.2d 1135 (7th Cir.1990). In the final analysis, though, this procedural point makes no real difference as we shall soon see. We now move to the facts where our recitation in many ways mirrors the findings of the district court.

In October 1992, a fellow named Jim Weiss owned nine acres of land between two dead-end portions of McMillen Street in the city of Fort Atkinson. He also owned the adjoining 13 acres to the east in the town of Koshkonong. Erdman, a developer, agreed to purchase the 9 acres with an option to buy the neighboring 13–acre parcel as well. His plan was to construct a community-based residential facility to house 24 elderly handicapped individuals.

The nine-acre parcel in Fort Atkinson was zoned R–1 for single-family housing. Weiss, at Erdman's request, attempted to have the property rezoned R–3, a multi-family housing district. The Fort Atkinson planning com-

mission denied the request on October 27, 1992.

After the planning commission's vote, Erdman and an associate met with the city manager and city attorney to see if something could be worked out. They were advised to apply for a conditional use permit under the R–1 zoning ordinances. Under the city's zoning code, nursing homes (a category into which Erdman's development fit) are a permissible conditional use in R–1 zones. The officials said that if the proposed facility was relocated to the southern part of the parcel, away from some single-family residential units, the application would have a better chance of being approved. Erdman, however, decided not to alter his proposal.

The rezoning request was abandoned on October 29, 1992, and a new request for a conditional use permit was filed. In addition, because the proposed facility would have been within 2,500 feet of two other community-based residential facilities, Erdman applied for an exception from the statutory distance restriction on such facilities, found in § 59.97(15)(a), Wisconsin Statutes. He also asked for an exception from § 59.97(15)(b)(1), Wisconsin Statutes, which allows cities to limit the population in community-based residential facilities to one percent of a city's population. According to the most recent census, one percent of Fort Atkinson's population is 103 persons. Eighty-eight people lived in community-based residential facilities at the time of the application, and the proposed facility for 24 individuals would have exceeded the one percent limit.

The city's planning commission met to consider the conditional use permit request in November of 1992. The commission was shown a site plan with the location of the building, parking areas, landscaped green space, and other improvements. The commission was also given building elevations showing what the facility would look like and floor plans indicating the layout of the building. The commission voted to grant the conditional use permit.

The Fort Atkinson city council reviews all planning commission decisions regarding conditional use permits, and it got into the act by setting the matter on the docket for a public hearing. Following the hearing, the council voted four to one to deny the request for a conditional use permit.

The members of the city council who voted against issuing the conditional use permit gave two reasons for their votes. First, the application sought a conditional use permit for the entire nine-acre parcel of vacant land but contained plans for only the portion of land on which the facility would actually sit. Second, the application called for a cul-de-sac at the north end of McMillen Street instead of a through street as contemplated in the city's master zoning plan. Council members said they were concerned that future water and sewer connections would be more difficult if a culsac were constructed. After the denial of the conditional use permit, Erdman built the facility on the contiguous 13–acre parcel of land in the town of Koshkonong. He then sued the City of Fort Atkinson under the FHAA.

The district court found no evidence to support a claim of intentional discrimination or discriminatory impact. We agree. But as the district court correctly noted, a defendant's conduct must also comply with 42 U.S.C. § 3604(f)(3)(B). Under this portion of the FHAA, municipalities unlawfully discriminate when they refuse

> to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

The definition of "dwelling" in § 3602(b) includes "any vacant land which is offered for sale or lease for the construction or location thereon" of any residence.

■ The term "reasonable accommodation" is most often interpreted by analogy with the same phrase in the Rehabilitation Act of 1973. 29 U.S.C. § 794. An accommodation is unreasonable if it either imposes "undue financial and administrative burdens" or requires a "fundamental alteration in the nature of a program." *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 2369, 2370, 60 L.Ed.2d 980 (1979). The accommodation which the city of Fort Atkinson was asked to make in this case was to grant a conditional use permit so that

the community-based residential facility could be built on a parcel of land zoned for single-family dwellings. On its face, the request itself is hardly unreasonable.

■ But not every refusal to grant a conditional use permit, even if the request is reasonable, violates the FHAA. Also, a "procedure, neutral on its face, may not be applied in a discriminatory manner" and, as we have previously noted, "determining whether a requested accommodation is reasonable requires, among other things, balancing the needs of the parties involved." *United States v. Village of Palatine, Illinois,* 37 F.3d 1230, 1233, 1234 (7th Cir.1994).

■ Our balancing of needs turns out to be a bit one-sided because, as we noted, Erdman failed to counter the City's statement of facts as required by the procedural rules of the district court for the Western District of Wisconsin. We turn again, then, to the two reasons why the application was denied. The first was that the plan did not set out the proposed development of the entire nine-acre site. The second was the proposed cul-de-sac, which was inconsistent with the city's master zoning plan. These reasons, we think, justify the rejection of the application for a conditional use permit. The FHAA forces municipalities to accommodate the way handicapped people differ from people without disabilities; requiring full plans and insisting that a roadway be configured consistent with a master zoning plan are not some of those ways. However, on this record, we need not base our decision solely on this ground.

The district court said that Erdman had not shown that the handicapped elderly were denied equal housing opportunity in the city. Erdman contends that this is a misinterpretation of the statute. A plaintiff should not be required, he says, to show inequality of opportunity before a defendant is required to show that the requested accommodation is unreasonable.

Erdman's argument goes too far. The statute is an attempt to provide "equal opportunity" through reasonable accommodations. If there were no inequality of opportunity, what would there be to make a reasonable accommodation about? Suppose there were no zoning requirements. Anyone—handicapped or not—could build whatever she wanted to build. What would be the point of a requirement for "reasonable accommodation"?

It is not necessary, however, for us to make pronouncements about what sort of proof should be offered to show that equal opportunity does not exist, other than to say we think the amount is slight. And this should cause no problem because, ordinarily, inequality is fairly obvious. In the *"Oxford House"* cases, for instance, the issue is often whether a number of unrelated recovering substance abusers can live in a single-family house. Living together in groups of that size is claimed to be therapeutic and also is the only way most of the residents can live in a single-family home. Thus, if a reasonable accommodation is not made, they are denied an equal opportunity to live in the "dwelling." *See, e.g., Oxford House v. Town of Babylon,* 819 F.Supp. 1179 (E.D.N.Y.1993); *Oxford House v. Township of Cherry Hill,* 799 F.Supp. 450 (D.N.J.1992).

Which brings us to the next issue—another one that will remain unanswered in this case as it does in *Brandt v. Chebanse,* 82 F.3d 172 (7th Cir. 1996), a case we decided a few weeks ago. In our case, the district court concluded that what the plaintiffs must show is inequality of opportunity to live in the *city* of Fort Atkinson. We express skepticism about that interpretation of a statute which refers specifically to inequality of opportunity to live in a *dwelling* (which counter intuitively includes vacant land). But for reasons which we now explain, we need not answer the question as to whether a city's providing handicapped housing somewhere within its borders is sufficient to satisfy the statute.

Even if inequality of opportunity exists, it does not follow that all requested accommodations must then be made. In other words, Fort Atkinson would not be required to grant Erdman permission to do whatever he wanted to do on his nine acres within the city. The city council in this case raised legitimate concerns, and Erdman did not expend much of an effort attempting to convince the council that his plan should have been accepted as

proposed or as modified. The council rejected the application for a conditional use on December 1, 1992. Rather than try to meet the city's concerns, Erdman, in a sense, skipped town. He obtained approval from Jefferson County to build on the adjoining land in the town of Koshkonong by March 9, 1993.[1]

His action meant that the elderly handicapped received a facility reasonably close to where Erdman wanted to build it in the first place. Certainly if the exact site on which Erdman ultimately built had been in the city, he would not have a claim. After all, what is the "dwelling" in this case? The land in question has been described as two parcels: a 9–acre site in the city and an "adjoining" 13–acre site in the town of Koshkonong. The truth, however, is that we're really talking about one 22–acre plot of land. Erdman built on one part of it—an eight iron away from where he preferred to build. As we said, after his rejection by the city, he turned almost immediately to the county and built the facility on a different part of the 22–acre parcel. And then he sought damages from the City. The district court was right to reject his claim, whether we embrace the reasons for the rejection or not. There would be something troubling about allowing a claim in this situation merely because the "dwelling" straddles the boundary between a city and a town, especially when Erdman did not truly persevere in his attempt to build within the city. The grant of summary judgment by the district court is

AFFIRMED.

## ORDER

### June 25, 1996

Judge Barbara B. Crabb of the United States District Court for the Western District of Wisconsin granted summary judgment to the defendant-appellee in this case on September 20, 1995. A panel of this court—Circuit Judges John L. Coffey, Frank H. Easterbrook, and Terence T. Evans—affirmed Judge Crabb's decision on May 24, 1996.

On June 7, 1996, the plaintiffs-appellants filed a petition for rehearing with suggestion for rehearing *en banc*. Judges Coffey, Easterbrook, and Evans have voted to deny the petition for rehearing. The suggestion for rehearing *en banc* has been reviewed by the other judges of this court—Chief Judge Posner and Judges Cummings, Flaum, Ripple, Manion, Kanne, Rovner, and D. Wood—and none of them have voted to hear the case *en banc*.

Accordingly, the petition for rehearing is DENIED, and the suggestion for rehearing *en banc* is not accepted.

---

1. This lawsuit was not filed, by the way, until nearly two years later on January 11, 1995. Erdman claims that by building in Koshkonong, he incurred increased construction costs, principally because sewer and water were not available in the town, and that he suffered lost operating income.