Diane CORDER, Plaintiff–Appellant,

v.

LUCENT TECHNOLOGIES INC.,
Defendant–Appellee.

Nos. 98–2722, 97–3618.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1998.

Decided Oct. 22, 1998.

Published Dec. 10, 1998.*.

---

* Previously issued as an unpublished order under Circuit Rule 53. We granted the motion for publication filed on November 19, 1998 by Defendant–Appellee Lucent Technologies Inc.

John A. Dienner, III (argued), Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, Chicago, IL, for Plaintiff–Appellant in Nos. 97–3618, 98–2722.

Charles C. Jackson (argued), Eric J. Gorman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee in No. 97–3618.

Jill S. Mulderink (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee in No. 98–2722.

Before BAUER, FLAUM, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Diane Corder worked for Lucent Technologies Inc. and its predecessors, Illinois Bell and AT & T, from 1973 until she was fired in 1996. (Although her employer did not become Lucent until rather late in the story, for the sake of simplicity we refer to the company as "Lucent" throughout this opinion, with the understanding that many of the events took place while AT & T was the corporate entity concerned.) In 1990, Corder began a battle with recurrent severe depression and anxiety. After her discharge, she sued Lucent, alleging it had fired her in violation of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The district court entered summary judgment in Lucent's favor, finding that Corder was not a "qualified" individual with a disability and that, even if she were, Lucent had offered a reasonable accommodation, which Corder had rejected. Corder now appeals this ruling and certain aspects of the district court's subsequent award of costs to Lucent.[1]

## I

Corder's career with what is now Lucent spanned 23 years. She worked in various of its suburban Chicago offices as an account support representative, which primarily entailed receiving telephone orders from existing customers for additional phone services or equipment and preparing service orders. For 17 years, Corder performed well in her job.

After her mother died in 1990, however, Corder began to experience recurrent bouts of severe depression and anxiety. During 1991, she applied for and received paid sick leave for this condition for a total of 43 weeks. In 1992, she took another 19 paid weeks off. For the remaining weeks of 1992 that she was not on leave, she failed to complete a single workweek. In early 1993, she received another nine paid weeks of sick leave. In the fall of that year, her position was transferred to another office, forcing her to make a longer commute. Because commuting sometimes triggered her panic attacks, Lucent allowed Corder to leave work one-half hour early, and it changed the times during which her telephone service lines were open.

But there were limits to Lucent's flexibility, and it denied her request to take the 1993 winter holiday season off. Corder nevertheless left work ill on November 18, 1993 and refused to return until January 13, 1994. During that period, Lucent scheduled Corder for an independent medical evaluation to determine her fitness for duty. Dr. John Utley, the examining physician, determined that she was "manipulative," not disabled. When Corder did return to work in January 1994,

she requested Lucent's permission to leave work two hours early each day because of the stress of her commute. Lucent denied this request, but it allowed Corder to take an unpaid leave of absence until the March 1994 opening of its Vernon Hills satellite office. This office was closer to Corder's home, reducing her commute, and she transferred there.

The shorter commute did not end Corder's attendance difficulties. From her first day at the Vernon Hills office until November 11, 1994, when she left on disability for an unrelated medical problem, Corder missed fully 49% of her scheduled shifts. In October of that year, Lucent scheduled Corder for another independent medical evaluation to try to assess her ability to work. On the advice of her attorney, who apparently (and erroneously) considered such examinations illegal, Corder failed to appear. In light of her medical difficulties, Lucent waited until it received notice that Corder had been medically cleared to return to work on January 23, 1995, and rescheduled its own fitness evaluation for January 19. Again Corder failed to appear. Lucent again rescheduled, this time for January 23. When Corder, now for the third time, refused to make herself available, Lucent placed her on administrative leave with full salary and benefits until her ability to return to work could be confirmed.

Over the next few months, Lucent tried to work with Corder, her attorney, and her psychiatrist to explore Corder's needs for accommodations and to obtain a firm assurance that she could reliably return to work. In April 1995, Corder consented to another independent medical evaluation, but its results regarding her ability to attend work consistently were inconclusive. Lucent's internal Accommodation Review Panel next scheduled a teleconference with Corder for May 12, 1995, during which she presented requests to take brief, frequent breaks during the workday, permission to leave early on Friday afternoons to meet with her psychiatrist, and the ability to take an "unpredict-

---

1. The latter is a successive appeal and has been submitted to the original panel under Operating Procedure 6(b). After examination of the briefs and the record, we have concluded that further oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

able" amount of time off from work should her symptoms so demand.

The Review Panel felt it could not make these accommodations at the small Vernon Hills office in which Corder had been working. Only one other account service representative was stationed there, and that employee had in the past been forced to work mandatory overtime to help compensate for Corder's lengthy and unpredictable absences. Instead, Lucent offered Corder the opportunity to work in its larger West Chicago facility, where the roughly 100 account service representatives on hand could more easily absorb the burden caused by Corder's likely absences. Corder refused this offer because of the significantly lengthier commute she would have to endure, informing Lucent she would only work at the Vernon Hills office. Corder likewise refused Lucent's offer to work part-time in Vernon Hills because she wanted to retain full salary and benefits.

In June 1995, Corder's paid administrative leave expired, but she received benefits under Lucent's Sickness & Accident Disability Plan for another full year. When these benefits expired in June 1996, Corder was scheduled for another independent medical evaluation to see whether, and under what conditions (if any), she could return to work. Corder had been informed that this examination would last for two hours, but in fact it had been scheduled for three hours. She refused to stay beyond the two hours originally planned. Lucent rescheduled the third hour for Monday, July 1, 1996. That morning, Corder called to say she would not be attending because she had been ill the preceding weekend. Lucent fired her two days later, citing her failure to complete the evaluation.

## II

■ We review the district court's grant of summary judgment *de novo*. *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 723 (7th Cir.1998). Whereas normally we would view the facts in the light most favorable to the non-moving party, in this case we have relied on Lucent's version of the facts because of Corder's failure to comply with Northern District of Illinois Local General Rule 12(N) in the court below. (In the end, as the district court also noted, this makes little difference, because Corder does not genuinely dispute the facts upon which our analysis rests.)

Rule 12(N) requires parties opposed to summary judgment to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon...." It also provides that the moving party's facts will be deemed admitted unless controverted by the opposing party. Yet instead of carefully parsing the record and indicating to the court where it supported her view of the facts, as Rule 12(N) unambiguously directs, Corder simply recited her own view of the facts without reference to the record and attached a "verification," swearing that the facts were "true and correct to the best of [her] knowledge, information and belief."

■ The trial court concluded that this sort of verification did not satisfy Rule 12(N), noting that it could not serve as admissible evidence in the event of trial because it failed to demonstrate how Corder was competent to testify to the facts she alleged. See Fed. R.Civ.P. 56(e). We review the decision to disregard an affidavit on summary judgment just as we review other evidentiary matters, for abuse of discretion. *Patterson*, 150 F.3d at 723. We have squarely held that failure to satisfy Local Rule 12(N) and failure to provide admissible evidence are each permissible grounds on which to exclude supporting materials from consideration on summary judgment. *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 580 (7th Cir.1995). The judge here did no more than strictly enforce the local rule, as was his prerogative, and evaluate the admissibility of the proffered evidence; in neither instance did he abuse his discretion. See *Erdman v. City of Fort Atkinson*, 84 F.3d 960, 961 (7th Cir.1996); *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139–40 (7th Cir.1990).

■ We next turn to the question of whether Corder's claim fell within the ambit of the ADA at all. The ADA protects only

"qualified individual[s] with a disability," 42 U.S.C. § 12112(a), and it defines a member of this protected group as someone who can perform the essential functions of her job with or without reasonable accommodations. *Id.* at § 12111(8). It was Corder's burden to show she was qualified within the meaning of the ADA at the time of her termination. *Nowak v. St. Rita High School,* 142 F.3d 999, 1003 (7th Cir.1998). At oral argument, Corder's counsel conceded that regular attendance, although not explicitly listed in her job description, was an implied essential function of Corder's job. Similarly, we have held that "an employee who does not come to work cannot perform the essential functions of his job." *Id.* at 1003; see also *Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 213 (4th Cir.1994). The question here, then, is whether Corder could show, at the time she was terminated, that she was able to attend work reliably.

Corder argues that the eighteen months' leave directly preceding her termination was at the insistence of Lucent and is therefore not probative of her ability to attend work at the time she was fired. Even so, there was literally nothing in the record to suggest that the future would look different from the past, and Corder's continuing request for an "unpredictable" amount of leave time as an ongoing accommodation actually contradicted her assertion that she would regularly attend work in the future. Put differently, Corder had no probative evidence, other than her bare assertions, on which a reasonable trier of fact could have relied to support a ruling in her favor. Thus, although she indisputably possessed the necessary skills for her job, she nonetheless failed to show that she was "qualified" for it. She therefore stands outside the protective reach of the ADA.

 But even if Corder had shown a genuine dispute of fact over her qualifications and ability to show up regularly, the "disability" requirement is only the first hurdle for an ADA plaintiff. It is clear that she regarded herself as able to work only with reasonable accommodations, and she claims that Lucent violated the law by refusing to accommodate her. Again, even viewing the record favorably to her, it can support no such conclusion. As our account of the facts illustrates, Lucent went the extra mile and then some for Corder. Lucent agreed to accommodate Corder's unpredictable need for time off if Corder would agree to work in the West Chicago office. (It is worth noting that such an accommodation easily qualifies as a reasonable one for ADA purposes, since nothing in the ADA requires an employer to give an employee indefinite leaves of absence. See *Nowak,* 142 F.3d at 1004; *Christian v. St. Anthony Med. Ctr.,* 117 F.3d 1051, 1053 (7th Cir.1997).) The fact that Corder would have preferred to work full-time in Vernon Hills is of no consequence, for as we have explained, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996). Assuming Lucent had a legal duty to accommodate Corder at all, and further assuming that it had a duty to accommodate her with permission to take unpredictable leave of her worksite, Lucent more than satisfied any requirements by offering Corder a full-time position in West Chicago. Corder's refusal to accept the accommodation does not change this fact.

### III

After we heard argument on Corder's merits appeal, the district court awarded costs to Lucent, as the prevailing party, pursuant to 28 U.S.C. § 1920 and Fed.R.Civ.P. 54(d). In case No. 98–2722, Corder challenges that order as well, claiming that the district court abused its discretion (1) by ordering her to pay for certain depositions at the rate charged for expedited rather than regular delivery, (2) by requiring her to pay Lucent's costs despite her inability to pay, and (3) by setting a fixed date by which she must pay.

 We review a district court's award of costs for abuse of discretion, reviewing carefully the statutory authority for recovering a cost but generally deferring to the district court's determination of whether a recoverable expense is reasonable. *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 945 (7th Cir.1997). Under 28 U.S.C. § 1920(2), a prevailing party may recover its

costs for deposition transcripts. *Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, 454 (7th Cir.1998). Corder argues that this means only ordinary transcript costs, not extraordinary costs such as those for expedited delivery. The district court, however, considered this point and concluded that the increased fees for expedited transcripts were justified given the discovery and motion schedule it set for the case. As the district court was in the best position to assess the needs of the parties in relation to the case schedule, we see no reason to meddle in its finding.

As for Corder's claim of indigence, it was up to her to provide evidence of her inability to pay sufficient to overcome the presumption that Lucent was entitled to its costs. *McGill v. Faulkner,* 18 F.3d 456, 459 (7th Cir.1994); *Popeil Brothers, Inc. v. Schick Elec., Inc.,* 516 F.2d 772, 776 (7th Cir.1975). Beyond her assertion that her income had dropped since she replaced her job at Lucent with a lower paying, part-time position elsewhere, she offered no such evidence. A drop in income, without more, is no indication of indigence, because it tells us nothing of Corder's other financial resources. *Cf. McGill,* 18 F.3d at 459 (finding incarceration alone inadequate to show indigence). The trial court did not abuse its discretion when it refused to modify its costs order because of her unsupported allegations of indigence.

Last, Corder complains that the district court should not have ordered her to pay Lucent its costs by July 10, 1998. In fact, this part of the order had the initial effect of giving her a brief extension of time, because the order itself was entered on June 9, 1998. At this point, lacking H.G. Wells' time machine, events have overtaken her complaint. Lucent noted in its brief that it had refrained from moving to enforce the costs order because the merits appeal was pending before this court. We are now affirming both the judgment on the merits for Lucent and the district court's award of its costs. The July 10, 1998, date will be meaningless in any further proceedings to enforce the judgment that may be necessary. We therefore decline to address Corder's arguments about whether a district court, consistently with Fed.R.Civ.P. 69, can specify a date by which a costs order must be satisfied.

The district court's judgment and its award of costs for Lucent are AFFIRMED.