RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BRENDA C. COLOSI,

*Plaintiff-Appellant,*

*v.*

No. 14-3710

JONES LANG LaSALLE AMERICAS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-00505—Donald C. Nugent, District Judge.

Decided and Filed:  March 17, 2015

Before:  KEITH, COOK, and DONALD, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Robert W. McIntyre, Kevin P. Shannon, WEGMAN, HESSLER & VANDERBURG, Cleveland, Ohio, for Appellant.  Stephanie Dutchess Trudeau, ULMER & BERNE LLP, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

COOK, Circuit Judge.  Plaintiff-Appellant Brenda C. Colosi lost a wrongful termination suit against her former employer, Defendant-Appellee Jones Lang LaSalle Americas, Inc. (JLL). As the prevailing party, JLL filed a $6,369.55 bill of costs that the court clerk approved without modification.  *See* Fed. R. Civ. P. 54(d)(1).  Colosi objected to most of the charges and moved the district court to reduce the bill to $253.50.  The district court denied the motion, finding each

1

cost reasonable, necessary to the litigation, and properly taxable under statute. *See* 28 U.S.C. § 1920. Colosi renews her objections on appeal. We AFFIRM the district court's judgment.

## I.

Section 1920 circumscribes the types of costs district courts may tax against the losing party. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). We review de novo whether taxed expenses fall within § 1920's list of allowable costs. *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 417 (6th Cir. 2005), *abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997 (2012). But "[a]s long as statutory authority exists for a particular item to be taxed as a cost, we do not overturn a district court's determination that the cost is reasonable and necessary, absent a clear abuse of discretion." *Id.* (quoting *Baker v. First Tenn. Bank Nat'l Ass'n*, No. 96-6740, 1998 WL 136560, at *2 (6th Cir. Mar. 19, 1998) (per curiam) (internal punctuation omitted)).

## II.

Most of the costs Colosi challenges relate to witness depositions. She contests, as a matter of law, the recoverability of the costs associated with the synchronization of her deposition video and transcript as well as costs flowing from a cancelled deposition. She also challenges transcription costs for the depositions of Robert Roe, Susan Abraham, and Margaret Barnes. These transcripts, she maintains, were unnecessary because each witness appeared at trial and because Roe and Abraham worked for JLL, obviating the need for deposition transcripts because JLL would not seek to impeach them.

The taxing statute allows the prevailing party to recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party. Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989).

We discern no abuse of discretion in the award of synchronization costs. We previously construed § 1920(2) to embrace the cost of synchronizing a deposition video and transcript,

provided the trial court finds the procedure reasonably necessary. *BDT Prods.*, 405 F.3d at 419–20. It did here. Although Colosi cites cases where other trial courts declined to tax synchronization costs as an unnecessary convenience, *see, e.g.*, *Whirlpool Corp. v. LG Elecs., Inc.*, No. 104-CV-100, 2007 WL 2462659, at *6 (W.D. Mich. Aug. 26, 2007), she never explains how the costs were unreasonable or unnecessary in this case.

Nor does Colosi demonstrate that the district court abused its discretion in finding the other deposition-related costs necessary. Since Colosi was the plaintiff in this action, the district court justifiably found that JLL needed to depose her in order to draft its summary-judgment motion and to prepare for trial. When she cancelled her first scheduled deposition, the court found that JLL incurred an attendance charge from the court reporter due to Colosi's last-minute notice of cancellation. We discern no clear error in the finding that this fee arose because of Colosi's actions and, therefore, no abuse of discretion in the determination that this fee was a reasonable addition to the transcription costs incurred in Colosi's second, completed deposition.

Furthermore, the fact that JLL did not use the other witnesses' deposition transcripts at trial does not render them unnecessary. *See Sales*, 873 F.2d at 120. The district court noted that Colosi sought the depositions of Roe and Abraham and called both as witnesses, raising the possibility that JLL would need to find contradictions between their depositions and testimony. It also found that JLL needed to depose Barnes before trial because Colosi relied heavily on an affidavit by Barnes in her opposition to summary judgment. In light of these facts, we find no abuse of discretion in taxing the transcript costs for these depositions against Colosi.

III.

Colosi also challenges the district court's decision to tax the cost of imaging her personal computer's hard drive. She argues that, as a matter of law, "most electronic discovery costs such as the imaging of hard drives are not recoverable as taxable costs." (Appellant Br. at 13.) Yet the statute includes no categorical bar to taxing electronic discovery costs. Rather, it authorizes courts to tax "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Thus, we first ask whether imaging a hard drive, or other physical storage device, falls within the ordinary meaning of "making copies." *See Taniguchi*, 132 S. Ct. at 2002.

The Oxford English Dictionary generally defines "copy" as a "transcript or reproduction of an original." 3 Oxford English Dictionary 915 (2d ed. 1989). Although initially used to describe one "writing transcribed from . . . another," speakers long ago began to use the word figuratively to mean "[s]omething made or formed, or regarded as made or formed, in imitation of something else; a reproduction, *image*, or imitation." *Id.* (emphasis added). Because Congress last amended the statute in 2008 to change "papers" to "materials," the figurative use seems the more appropriate. *See* Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 6, 122 Stat. 4291, 4292 (2008). Moreover, courts have long understood that the phrase "making copies" fairly includes the production of imitations in a medium or format different than the original. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1329 (Fed. Cir. 2013) (explaining that one can "copy" a document from paper to digital format and vice versa); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 166 (3d Cir. 2012) (explaining that a parchment replica of the stone tablets containing the Ten Commandments falls within the ordinary meaning of "copy"); *BDT Prods.*, 405 F.3d at 419–20 (upholding cost award for scanning and creating electronic images of paper documents under § 1920(4)).

Imaging a hard drive falls squarely within the definition of "copy," which tellingly lists "image" as a synonym. And the name "imaging" describes the process itself. Imaging creates "an identical copy of the hard drive, including empty sectors." *CBT Flint*, 737 F.3d at 1328 (quoting The Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 27 (Sherry B. Harris et al. eds., 3d ed. 2010)). The image serves as a functional reproduction of the physical storage disk. From the image file, one can access any application file or electronic document on the hard drive with all that document's original properties and metadata intact. *Id.* If not actually made or formed in the image of the hard drive, we certainly regard it as such. *See* 3 Oxford English Dictionary 915. Thus, a plain reading of the statute authorizes courts to tax the reasonable cost of imaging, provided the image file was necessarily obtained for use in the case. *See CBT Flint*, 737 F.3d at 1329–30; *id.* at 1334 n.1 (O'Malley, J., concurring in part and dissenting in part).

In urging the opposite interpretation, Colosi relies on the Third Circuit's decision in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.* In that case, the prevailing party sought to recover the entire cost of its electronic discovery, including imaging hard drives, deduplicating image files,[1] populating a database, reviewing the files for discoverable information, redacting privileged information, converting the responsive documents to an agreed-upon format, and burning these document files onto a DVD for production. *See Race Tires*, 674 F.3d at 161–62, 166–67, 169, 171 n.11. The Third Circuit construed the phrase "making copies" in § 1920(4) to exclude most of these processes in light of historical context and the Supreme Court's traditionally narrow reading of § 1920. *Id.* at 166–72 (citing *Crawford*, 482 U.S. at 441–42). It compared many of these processes to untaxable discovery procedures from the pre-digital era like visiting a client's records room, searching for responsive documents, copying the relevant papers, and bringing them back to the law firm for review and redaction. *Id.* at 169. It concluded that only converting responsive documents to an agreed-upon format and burning those files onto a DVD were similar enough to the pre-digital act of photocopying to be "the functional equivalent of 'making copies.'" *Id.* at 171 & n.11; *accord Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260–61 (4th Cir. 2013) (adopting *Race Tires*'s rationale in a case with similar facts).

We find this construction overly restrictive. In attempting to do justice to the historically limited role of taxing costs in the American system, the *Race Tires* court ignored § 1920's text. We need not ask whether imaging is the "functional equivalent" of making photocopies in the era before electronic discovery because—consistent with the 2008 amendments—the procedure comes within the ordinary meaning of "making copies of any materials." *See Taniguchi*, 132 S. Ct. at 2002–06 (beginning its interpretation of § 1920 with the ordinary meaning of words before examining statutory context). While the Third Circuit rightly worried over expanding the scope of § 1920 to include expensive electronic discovery procedures not contemplated by Congress, this concern more appropriately pertains to the context-dependent question of whether the prevailing party necessarily obtained its copies for use in the case.

---

[1]"Deduplication is the culling of a set of documents to eliminate duplicate copies of the same document, creating a smaller set for production or review." *CBT Flint*, 737 F.3d at 1331–32.

Generally, trial courts have the discretion to tax the cost of "copies attributable to discovery" as necessarily obtained for use in the case, even if neither party uses the copy at trial. *Jordan v. Vercoe*, No. 91-1671, 1992 WL 96348, at *1 (6th Cir. May 7, 1992) (order); *accord Country Vintner*, 718 F.3d at 257 & n.9 (listing cases from other circuits). Courts often contrast copies necessarily produced to meet discovery obligations, which are recoverable, with copies produced solely for internal use or the convenience of counsel in conducting discovery, which are not. *See, e.g., In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1365 (Fed. Cir. 2011) (applying Ninth Circuit law); *EEOC v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000); *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991). Even in *Race Tires*, the prevailing party's reason for imaging its hard drives—to facilitate counsel's review of discoverable documents rather than to create the actual production—steered the Third Circuit's analysis. *See Race Tires*, 674 F.3d at 169, 171 n.11 ("It is all the other activity, such as searching, culling, and deduplication, that are not taxable.").

Here, we perceive no abuse of discretion in ruling imaging costs reasonable and necessary. Rather than produce relevant computer files in response to JLL's discovery requests and the district court's orders compelling production, Colosi delivered her computer to her attorney's office and demanded that JLL send a third-party vendor to image its hard drive under her attorney's supervision. Colosi's decision to tender the physical computer forced JLL to dispatch a vendor and make an image before it could search the hard drive for discoverable information, as the district court determined it had a right to do. JLL sent a vendor to image the hard drive not as an expedient; this was the sole avenue permitting review of Colosi's files. We analogize this situation to the more typical—and taxable—cost of a party delivering an image file in response to an opponent's production request.[2] *See CBT Flint*, 737 F.3d at 1334 n.1 (O'Malley, J., concurring in part and dissenting in part) ("I do not question that the cost of imaging source media would fall under section 1920(4) if it were directly imaged and provided to the opposing party as part of discovery."). The vendor's invoice excludes the cost of

---

[2]We recognize the disagreement between the Third and Federal Circuits on the question of whether § 1920 permits courts to tax the cost of imaging as it usually occurs in the electronic discovery process. *Compare CBT Flint*, 737 F.3d at 1329–30 (holding imaging costs taxable when the opposing party requests metadata be included in the production and imaging is the least expensive manner of obtaining it), *with Race Tires*, 674 F.3d at 169–71 (holding imaging an untaxable process regardless of the need for metadata). But the unique facts of this case do not require us to address that question, and we do not.

deduplication, indexing, and the other non-copying electronic discovery services. *See CBT Flint*, 737 F.3d at 1331–32; *Race Tires*, 674 F.3d at 169–70. In fact, Colosi concedes that "JLL never went beyond the mere electronic copying of all of the Colosi family's personal computer files." (Appellant Reply at 6.) And she points to nothing in the record showing that the district court abused its discretion in finding the invoice amount reasonable.

IV.

We therefore AFFIRM the district court's judgment awarding $6,369.55 in costs to JLL as the prevailing party.