# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 6, 2020         Decided March 27, 2020

No. 19-7064

UNITED STATES OF AMERICA, EX REL. HARRY BARKO,
APPELLANT

v.

HALLIBURTON COMPANY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-01276)

*Todd Yoder* argued the cause for appellant. With him on the briefs were *Michael D. Kohn*, *David K. Colapinto*, and *Stephen M. Kohn*.

*Christian D. Sheehan* argued the cause for appellees. With him on the brief were *John P. Elwood*, *Craig D. Margolis*, and *Tirzah S. Lollar*. *Alden L. Atkins*, *Kathleen C. Cooperstein*, and *John M. Faust* entered appearances.

Before: SRINIVASAN, *Chief Judge,* TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: At the end of a typical case and at the discretion of the district court, the winner may bill the loser for costs authorized by 28 U.S.C. § 1920. In this case, we consider costs awarded pursuant to two subsections of section 1920: subsection (4), which covers the "costs of making copies of any materials where the copies are necessarily obtained for use in the case"; and subsection (2), which covers "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." *Id.* § 1920(4), (2). Because the district court awarded costs in excess of those authorized by these two provisions, we reverse in part, affirm in part, and remand for the district court to retax costs in accordance with this opinion.

## I.

In this qui tam action brought under the False Claims Act, 31 U.S.C. §§ 3729 et seq., appellant Harry Barko alleged that his former employer, Kellogg Brown & Root Services (KBR), and various subcontractors "defrauded the U.S. Government by inflating costs and accepting kickbacks while administering military contracts in wartime Iraq." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 756 (D.C. Cir. 2014). For purposes of this appeal, the merits of Barko's case are less important than the details of the parties' discovery.

Barko served sixty-four document requests and filed two motions to compel; KBR compiled over 2.4 million potentially responsive pages, ultimately producing over 171,000 of those pages; and both parties noticed and conducted numerous depositions. Discovery was so contentious that the case twice made its way to our court, and both times we issued writs of mandamus vacating district-court orders that had required production of privileged documents. *See In re Kellogg Brown*

*& Root, Inc.*, 796 F.3d 137, 140 (D.C. Cir. 2015); *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 756.

To process Barko's document requests, KBR used an e-discovery software called Introspect to "host, review, and export data for production." Appellees' Br. 4. The 2.4 million potentially responsive pages were loaded into Introspect, which required scanning hard copies of certain documents into electronic form and converting preexisting electronic files into the hosting platform's format. Within the platform, documents were organized, keyword-searched, indexed, screened, and otherwise processed—tasks familiar to any law-firm associate who has survived "doc review." As a last step, KBR converted the 171,000 responsive documents into TIFF or PDF files, transferred them onto USB drives, and produced the materials to Barko's counsel.

After the district court granted summary judgment to KBR, pursuant to Federal Rule of Civil Procedure 54(d)(1)—the procedural mechanism by which a prevailing party seeks compensation for litigation expenses—the company filed a bill of costs with the clerk of the district court, seeking over $100,000 in costs. As relevant here, those costs fell into two categories. First, relying on section 1920(4), KBR sought $33,000 in Introspect licensing fees, $10,000 for preparing files to be uploaded to the e-discovery platform, $15,000 for the various "doc review" processing tasks, and $5,000 in traditional copying-and-printing-related costs. Barko objected, arguing that such costs fall outside the scope of section 1920(4). Second, relying on section 1920(2), KBR sought $7,000 in deposition-related expenditures. Although not disputing that section 1920(2) authorizes such costs, Barko argued that the specific expenses sought by KBR were not "necessary." Appellant's Br. 35.

The clerk nonetheless taxed the full bill, prompting Barko to file a motion in district court to "retax" costs. The district court denied both the motion to retax and Barko's subsequent motion for reconsideration. Barko appeals, reiterating the arguments made in the district court.

## II.

We begin with section 1920(4), which, again, authorizes district courts to award "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Pursuant to this subsection, KBR billed approximately $65,000 in both e-discovery expenses and more traditional copying-and-printing costs. Challenging these costs, Barko argues that some do not qualify as "making copies" and others were not "necessarily obtained for use in the case." *Id.*

For its part, KBR contends that "making copies" includes not just the act of generating duplicates but also all the predicate and ancillary steps leading up to and facilitating the duplication. Emphasizing what it calls "the realities of modern e-discovery," KBR insists that its "[e]-discovery hosting and processing costs" are recoverable because it "incurred [those costs] during essential steps in the process of copying and converting data from its raw format to its production format." Appellees' Br. 33, 35.

KBR draws its expansive interpretation of section 1920(4) from Congress's 2008 amendment of that statute. Prior to the amendment, section 1920(4) covered "[f]ees for . . . copies of papers." 28 U.S.C. § 1920(4) (2007). Now it covers "the costs of making copies of any materials." 28 U.S.C. § 1920(4) (2018). According to KBR, Congress amended the statute in order to "make allowable both the costs of the copies themselves (whether hard copy or electronic) *and* the costs

incurred in the process of making such copies." Appellees' 34–35. We find no support for KBR's capacious interpretation of the statute.

To begin with, nothing about the edit from "copies of paper[]" to "making copies of any materials" suggests that Congress meant to dramatically alter the scope of recoverable costs. Both versions use the word "copies," and because that word is "undefined in [the] statute, we give the term its ordinary meaning," *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012). "[M]aking copies" means causing imitations or reproductions of original works to come into being, *see Merriam-Webster's Collegiate Dictionary* 702 (10th ed. 1997) ("make": "to cause to happen"); *id.* at 256 ("copy": "an imitation, transcript, or reproduction of an original work"), and the parties agree that "any materials," 28 U.S.C. § 1920(4), includes electronic as well as traditional paper copies. In other words, the phrase "making copies of any materials" still refers to the task of duplication; it does not include the steps leading up to duplication any more than the old version did.

Reinforcing this point, Congress made no change to section 1920(4)'s remaining clause: "necessarily obtained for use in the case." *Id*. To be cost-recoverable, then, a copy must also be "obtained to be produced pursuant to . . . [a] discovery rule[]." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 914, 927 (9th Cir. 2015). Indeed, "[c]ourts often contrast copies necessarily produced to meet discovery obligations, which are recoverable, with copies produced solely for internal use or the convenience of counsel in conducting discovery, which are not." *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 297 (6th Cir. 2015). For example, as the Federal Circuit has explained, "if a [defendant] does its chargeable work . . . on a large volume of documents *before* culling to produce only a subset, the awarded copying costs must be confined to the

subset actually produced." *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1330 (Fed. Cir. 2013).

Moreover, the author of the 2008 amendment, the Judicial Conference Committee on Court Administration and Case Management, emphasized that it intended the amendment to have "limited" effect. Judicial Conference, *Report of the Proceedings of the Judicial Conference of the United States* (*Conference Report*) 10 (Mar. 18, 2003). "[T]he Committee considered whether technological advances that ha[d] occurred over the past twenty-five years ma[d]e it appropriate to reevaluate the cost provisions in 28 U.S.C. § 1920, so that recovery for costs associated with many litigation tools commonly used today . . . might be permitted." Committee on Court Administration and Case Management, *Report of the Judicial Conference, Committee on Court Administration* 3–4 (Mar. 2003). It concluded, however, "that the charges for these new expenses could dramatically expand the intention of the statute, which was to allow the taxing of costs in a very limited way." *Id.* at 4. Ultimately, the Committee "endorse[d]" only a "limited amendment[] . . . to permit taxing the costs associated with copying materials whether or not they are in paper form." *Conference Report*, *supra*, at 10.

Finally, KBR's view is unfaithful to the modest way in which the Supreme Court has long interpreted section 1920. Addressing the statute generally, the Court explained that "Congress meant to impose rigid controls on cost-shifting in federal courts." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). Then, after the 2008 amendment, in *Taniguchi v. Kan Pacific Saipan, Ltd.*, the Court made clear that the statute covers only "relatively minor, incidental expenses." 566 U.S. at 573.

The Court's application of that principle in *Taniguchi* is

instructive. Addressing a separate subsection of the statute—subsection (6)—the Court considered whether the phrase "'compensation of interpreters' includes costs for document translation." *Id.* at 566 (quoting 28 U.S.C. § 1920(6)). Finding that the ordinary meaning of "interpreter" denotes "one who translates spoken, as opposed to written, language," *id*. at 566, the Court concluded that subsection (6) does not permit taxation of written translation costs, *see id.* at 572. "Because taxable costs are limited by statute and are modest in scope," the Court warned, courts must not "stretch the ordinary meaning of the cost items Congress authorized in § 1920." *Id.* at 573. So too here. We may not "stretch the ordinary meaning," *id.*, of the term "making copies" to include all "preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication," *CBT Flint*, 737 F.3d at 1328.

In sum, we agree with the Federal Circuit that the 2008 amendment was "modest rather than dramatic." *Id*. at 1326. We also agree that "[a]pplying section 1920(4) . . . calls for some common-sense judgments guided by a comparison with the paper-document analogue." *Id.* at 1331; *see In re Online DVD-Rental*, 779 F.3d at 930–31 (comparing certain e-discovery activities to their analog analogues). Put another way, section 1920(4) authorizes taxation of costs for the digital equivalent of a law-firm associate photocopying documents to be produced to opposing counsel. With that standard in mind, we turn to the costs at issue in this case.

## A.

KBR's e-discovery costs, all of which the district court awarded, stem from five different stages: (1) initial conversion, i.e., converting files from their native formats into a format compatible with an e-discovery hosting platform; (2) subscribing to a hosting platform, in this case Introspect,

that facilitates the various steps of e-discovery; (3) processing documents, e.g., organizing, keyword-searching, and Bates stamping; (4) conversion for production, i.e., converting documents into shareable formats for production to opposing counsel, and, where necessary, transferring those files onto portable media, e.g., USB drives; and (5) production processing, i.e., drafting production cover letters and shipping discovery materials to opposing counsel.

Hewing close to section 1920(4)'s text and guided by *Taniguchi*, we conclude that the only e-discovery costs that KBR may recover are those incurred in step (4)—converting electronic files to the production formats (in this case, PDF and TIFF) and transferring those production files to portable media (here, USB drives). That means KBR can recover $362.41 in "External E-Discovery" conversion and production costs— expenses that Barko concedes are taxable. Appellant's Br. 3 n.3. These tasks resemble the final stage of "doc review" in the pre-digital age: photocopying the stack of responsive and privilege-screened documents to hand over to opposing counsel. Such costs were taxable then, and the e-discovery analogs of such costs are taxable now.

But KBR may not collect the more-than-$10,000 in initial file conversion expenses (stage (1)) because the record demonstrates that those costs were incurred solely for the company's convenience. KBR offers no other reason for converting the files into Introspect's proprietary format before later converting them to PDF or TIFF for sharing with opposing counsel. In other words, KBR has failed to demonstrate that the intermediate Introspect files were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4).

The remaining e-discovery costs (stages (2), (3), and (5)) are likewise untaxable. "Congress did not authorize taxation of

charges necessarily incurred to discharge discovery obligations," as KBR claims; instead, Congress "allowed only for the taxation of the costs of making copies." *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 169 (3d Cir. 2012). Again, these e-discovery tasks are comparable to the steps that law-firm associates took in the pre-digital era in the course of "doc review"—identifying stacks of potentially relevant materials, culling those materials for documents containing specific keywords, screening those culled documents for potential privilege issues, Bates-stamping each screened document, and mailing discovery materials to opposing counsel. Because "[n]one of the steps that preceded [or followed] the actual act of making copies in the pre-digital era would have been considered taxable," *id.*, such tasks are untaxable now, whether performed by law-firm associate or algorithm.

## B.

KBR also seeks to recover the roughly $5,000 it paid an external vendor, Ricoh, to print hard copies of certain exhibits. Barko challenges two items on the Ricoh invoices.

First, he disputes some $500 in "Hand Time/Labor" costs. We agree with Barko that these are "ancillary costs . . . incurred . . . in conjunction with . . . duplication," *CBT Flint*, 737 F.3d at 1328, and thus unrecoverable as a matter of law.

Second, Barko objects to some $4,600 for binders, tabs, and folders used to package the exhibits. According to Barko, these "office supplies" are untaxable because they too constitute "ancillary costs" that "have no direct connection to the actual process of making copies." Appellant's Br. 37–38. On this point we disagree. Like paperclips and staples, binders and folders are needed to keep the "cop[y]" together and are so no less taxable than the cost of the "cop[y]" itself. 28 U.S.C.

§ 1920(4).

### III.

Pursuant to section 1920(2), which permits taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," the district court ordered Barko to pay KBR's deposition-related expenses. Barko now challenges some $7,000 in such costs: $6,000 for expediting preparation of five deposition transcripts and $900 for producing a video recording of one deposition. Barko does not dispute that these costs fall within section 1920(2)'s ambit. Instead, he argues that the district court abused its discretion in finding these expenses reasonably necessary.

"Subject to a proper interpretation of section 1920[], we review the district court's award of costs for abuse of discretion." *CBT Flint*, 737 F.3d at 1325. Specifically, we ask whether the district court abused its discretion in deeming the deposition-related costs "reasonably necessary for the litigation," which is "determined as of the time" the costs were incurred. *Colosi*, 781 F.3d at 295 (internal quotation marks omitted). In reviewing a district court's necessity finding, we are mindful that trial judges are in a far better position than we "to assess the needs of the parties in relation to the case schedule." *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 929 (7th Cir. 1998).

As to the $6,000 in transcript-expedition costs, Barko contends that "KBR provided no acceptable reason for the necessity of the[] expedited transcripts." Appellant's Br. 34. The district court, however, found that the costs of expediting some transcripts were justified by a pending "Motion to Compel" and "dispositive motions deadline." *United States ex rel. Barko v. Halliburton Co.*, No. 05-1276, slip op. at 7 (D.D.C. Dec. 6, 2018) (internal citations omitted). Other

expedition costs were justified by "what at the time seemed like an inevitable second motion to compel . . . as well as other ongoing discovery disputes in the highly contentious discovery." *Id.* (internal quotation marks omitted) (alteration in original). Barko has given us "no reason to meddle in [the district court's] finding[s]." *Corder*, 162 F.3d at 929.

As to the $900 in video-production costs, Barko argues that KBR offered only "vague claims" of necessity and proffered no explanation for why it needed the video, given that it already had the written transcripts. Appellant's Br. 36. The district court, however, accepted—reasonably, in our view—KBR's explanation that the video was "necessary to prepare for trial and for potential use for impeachment or to guarantee the availability of [the witness's] testimony at trial," *Barko*, No. 05-1276, slip op. at 8 (internal quotation marks omitted and alteration in original). "[T]he cost of taking video depositions may be awarded if shown to be necessary for use in the case . . . ." *United States ex rel. Long v. GSDMIdea City, LLC*, 807 F.3d 125, 130 (5th Cir. 2015).

## IV.

Too often "cost disputes embody all the acrimony of hotly contested litigation, sometimes with great nitpicking and pettifogging, refusing to 'go gently into that good night' of the closed docket." *Matter of Penn Central Transportation Co.*, 630 F.2d 183, 191 (3d Cir. 1980). We trust that this opinion will ensure that in this circuit "the assessment of [litigation] costs [will] most often [be] merely a clerical matter that can be done by the court clerk." *Taniguchi*, 566 U.S. at 573 (internal quotation marks omitted). For the foregoing reasons, we reverse in part, affirm in part, and remand for the district court to retax costs in accordance with this opinion.

*So ordered.*