NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1865
_____

KAREN CAMESI; ERIN O'CONNELL; LORI SHAFFER; DINAH BAKER,
on behalf of themselves and all other employees similarly situated,

Appellants

v.

UNIVERSITY OF PITTSBURGH MEDICAL CENTER; UPMC; UPMC HEALTH
SYSTEM; UPMC BEDFORD MEMORIAL HOSPITAL; UPMC BRADDOCK; UPMC
MCKEESPORT; UPMC NORTHWEST; UPMC PASSAVANT; UPMC
PRESBYTERIAN; UPMC PRESBYTERIAN SHADYSIDE; UPMC SHADYSIDE;
UPMC SOUTHSIDE; UPMC ST MARGARET; MAGEE WOMENS HOSPITAL OF
UPMC; MERCY HOSPITAL OF PITTSBURGH; MONTEFIORE HOSPITAL;
MONTEFIORE UNIVERSITY HOSPITAL; WESTERN PSYCHIATRIC INSTITUTE
AND CLINIC; CHILDRENS HOSPITAL OF PITTSBURGH OF THE UPMC HEALTH
SYSTEM; UPMC LEE; UPMC HORIZON; UPMC HOLDING COMPANY, INC.;
UPMC HEALTH NETWORK, INC; JEFFREY A. ROMOFF; GREGORY PEASLEE;
UPMC 401A RETIREMENT SAVINGS PLAN; UPMC 403B RETIREMENT
SAVINGSPLAN; UPMC BASIC RETIREMENT PLAN
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3:09-cv-00085)
District Judge: Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2016

Before: CHAGARES, RESTREPO and VAN ANTWERPEN, Circuit Judges.

(Filed: March 21, 2016)

_____

VAN ANTWERPEN, *Circuit Judge*.

Appellants Karen Camesi, Erin O'Connell, Lori Shaffer, and Dinah Baker (the "Camesi Named Plaintiffs") appeal the final decision of the U.S. District Court for the Western District of Pennsylvania denying their motion to vacate or reduce the amount of costs awarded. For the following reasons, we will vacate the decision of the District Court concerning costs and remand for proceedings consistent with this opinion.

## I.      Factual Background and Procedural History

In April 2009, Appellants, on behalf of themselves and all other employees similarly situated, filed a complaint against University of Pittsburgh Medical Center and multiple related entities (collectively "UPMC"), in the U.S. District Court for the Western District of Pennsylvania for violations of the Fair Labor Standards Act ("FLSA").[1] Appellants alleged that UPMC failed to comply with the FLSA through its policy of automatically deducting thirty-minute meal breaks from the pay of certain employees. *Camesi v. Univ. of Pitt. Med. Ctr.*, No. 09-85J, 2011 WL 6372873, *1 (W.D. Pa. Dec. 20, 2011) (hereinafter "Memorandum and Order to Decertify"). The District Court, (Bissoon, J.), granted conditional (Stage I) certification of this collective action under FLSA Section 16(b). *Camesi v. Univ. of Pitt. Med. Ctr.*, No. 09-85J, 2009 WL

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Appellants alleged other causes of action, none of which are at issue on appeal.

2

1361265, *6 (W.D. Pa. May 14, 2009). Upon notification, approximately 3,000 potential collective action members opted in. (Appellee's Br. 5).

Shortly after the District Court granted conditional certification, "the parties embarked on a long and contentious course of discovery." Memorandum and Order to Decertify, 2011 WL 6372873, at *2. The dispute centered on Appellants' request for certain electronically stored information ("ESI"). Twice, the District Court granted Appellants' motions to compel UPMC to produce ESI. (A-72, A-79). In the second order to compel, the District Court found UPMC had not established "objectively reasonable compliance" with the discovery rules. *Camesi v. Univ. of Pitt. Med. Ctr.*, 269 F.R.D. 493, 494 (W.D. Pa. 2010). UPMC twice moved for protective orders excusing them from producing ESI, the first of which was denied, the second of which was rendered moot by the Consent Order discussed below. (A-79, A-88). The District Court acknowledged that UPMC had a "rocky start" complying with its ESI responsibilities, but ultimately "engaged in meaningful, good faith efforts." (*Id.* at A-2) (internal quotation marks omitted).

In early 2011, the parties stipulated to a Consent Order, which the District Court adopted, that had the effect of staying further ESI discovery pending motions regarding Stage II certification. (*Id.* at A-88).[2] The parties filed cross-motions, accompanied by

---

[2] Just before the court entered the Consent Order, in an email sent on December 10, 2010 to Appellants' counsel, UPMC reported the following statistics regarding the volume of ESI that its vendor had gone through, including: "24,324,587 source files processed . . . 1,003,538 files/ 42,338,063 pages posted to Ontrack Inview[,] 593 gig of files posted to Ontrack Inview." (A-255). These statistics, which UPMC stated represented only 77% of the data required by the order to compel, totaled over forty

3

extensive briefing, to certify and decertify the collective action respectively. In December

2011, the District Court granted UPMC's motion to decertify, and denied Appellants'

motion to certify. Memorandum and Order to Decertify, 2011 WL 6372873, at *1. After

this Court dismissed Appellants' appeal of the Order to Decertify for lack of jurisdiction,

UPMC filed a bill of costs with the Clerk, to which Appellants filed objections.[3] (A-106,

A-138). Following briefing from both parties, the Clerk taxed costs in the amount of

$317,572.40 ($7,572.40 for transcript fees, $310,000 for copying costs) against

Appellants. (A-258–A-259). Appellants moved for the District Court to review the

taxation of costs, as well as to reduce or vacate the award. (A-107). The District Court

granted the motion for judicial review, and denied the motion to reduce or vacate costs.

(A-1–A-4). This timely appeal followed. (A-5).

## II.    Discussion[4]

### A.    Standard of Review

We exercise plenary review over legal questions related to an award of costs. *In re*

*Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 458 (3d Cir. 2000). To the extent a district

---

million pages. (*Id*.). UPMC reported that its vendor estimated the total volume would "be in the neighborhood of 55–65 million pages when . . . completed." (*Id.*).

[3] Appellants chose to move for "voluntary dismissal of their claims with prejudice in order to secure a final judgment for purposes of appeal" pursuant to Federal Rule of Civil Procedure 41(a). *Camesi v. Univ. of Pitt. Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (internal quotation marks omitted). We dismissed the appeal for lack of jurisdiction because the order decertifying the collective action was interlocutory and not an appealable final order under 28 U.S.C. § 1291. *Id.* at 247.

[4] The District Court had jurisdiction to hear the Camesi Named Plaintiffs' federal claims pursuant to 28 U.S.C §§ 1331 and 1337. We have jurisdiction to review final orders of a district court pursuant to 28 U.S.C. § 1291.

4

court's ruling applies legal principles governing the award of costs, we review for abuse of discretion. *Id.*

  B.  *Analysis*

The Camesi Named Plaintiffs advance two statutory grounds and an alternative equitable ground on which they claim the District Court erred in entering the award of costs. First, they allege the District Court violated 28 U.S.C. § 1920 by awarding costs that are not recoverable under this Court's standard in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.* 674 F.3d 158 (3d Cir. 2012).[5] Second, they claim the District Court incorrectly applied Federal Rule of Civil Procedure ("Rule") 54(d)(1) because Section 216(b) of the FLSA "provides otherwise" for discovery costs. Alternatively, even if the District Court's award complied with governing law, they say it abused its discretion by awarding costs that would render the Camesi Named Plaintiffs indigent by requiring that they bear costs associated with the certification efforts of not only themselves, but also the nearly 3,000 opt-in plaintiffs. (Appellants' Br. 11–13).

Whether the taxed costs are recoverable as "making copies" under § 1920(4) is a threshold issue we must address before proceeding to Appellants' additional statutory and alternative equitable argument. On this issue, the District Court simply stated

---

[5] Appellants raise two reasons why the taxed costs are not recoverable under § 1920(4). The first reason Appellants put forward is that the awarded costs include nontaxable items under controlling Third Circuit precedent. The second reason Appellants advance is that the awarded costs were not "necessary for use in the case" under § 1920(4). (Appellants' Br. 11–12) (internal quotation marks omitted). The first reason is the focus of this opinion. To the extent that the second reason cannot, and need not, be reached until the nature of the awarded costs is determined, we decline to do so at this time.

"Defendants have submitted declarations demonstrating, to the Court's satisfaction, that the charges asserted are recoverable under prevailing law." (A-2). From the sparse record, it is not readily apparent what activities constitute the ESI charges in the award of costs. Accordingly, we are unable to review whether these activities are recoverable under § 1920(4).

### 1. Recoverable Costs Under 28 U.S.C. § 1920(4)

Rule 54(d)(1) establishes that "[u]nless a federal statute, these rules, or court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." This rule creates a "strong presumption that costs are to be awarded to the prevailing party." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d at 462. By enacting 28 U.S.C. § 1920, Congress indicated that courts have discretion to tax certain enumerated litigation expenses as "costs." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). As relevant to the instant action, § 1920(4) defines the term "costs" in Rule 54(d) to include "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." *Race Tires Am., Inc.*, 674 F.3d at 163 (quoting 28 U.S.C. § 1920(4)) (internal quotation marks omitted).

The clerk of court is tasked with taxing costs, which a court may review on a motion. Fed. R. Civ. P. 54(d)(1). A district court reviews the clerk's determination of costs *de novo*. *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d at 461. A *de novo* review entails "reviewing new evidence and circumstances that militate[] in favor of reducing the earlier imposed costs award." *Id.* (citing *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233 (1964)).

As both parties acknowledge, our decision in *Race Tires* governs which costs are taxable under § 1920(4). (Appellant's Br. 11–12); (Appellee's Br. 14–15). Examining the history of § 1920(4), the plain meaning of the term "copy," and Supreme Court precedent, we derived no Congressional intent to "shift all the expenses of a particular form of discovery—production of ESI—to the losing party." *Race Tires Am., Inc.*, 674 F.3d at 171 (citing *Crawford Fitting Co.*, 482 U.S. at 442). From a myriad of ESI discovery charges for which the prevailing party sought costs, we held that only "the conversion of native files to TIFF[6] . . . and the scanning of documents to create digital duplicates" constituted "making copies of materials" under § 1920(4). *Id.* at 167 (internal quotation marks omitted). The Court discussed this second taxable activity, "scanning of documents to create digital duplicates," in the context of "the scanning of hard copy documents" into an agreed upon format for the requesting party's use in the case. *Id.* at 167, 171.

Drawing parallels between ESI discovery and the "process employed in the pre-digital era," this Court emphasized that Congress authorized taxation only for a limited subset of costs. *Id.* at 169. Section 1920 enumerates costs for making copies, but not for "charges necessarily incurred to discharge discovery obligations." *Id.* As with pre-digital era discovery, ESI entails a "number of steps essential to the ultimate act of production."

---

[6] TIFF, an acronym for Tagged Image File Format, "[a] widely used and supported graphic file format[ ] for storing bit-mapped images, with many different compression formats and resolutions" was the "agreed-upon default format for production of ESI" in *Race Tires America, Inc.* 674 F.3d at 161 n.2, 167 (alterations in original) (quoting The Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 50 (Sherry B. Harris et al. eds., 3d ed. 2010)).

*Id.* Just as "[n]one of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable," with ESI only the "functional equivalent of 'making copies'" is taxable. *Id.* at 169, 171 n.11. Accordingly, "all the other activity, such as searching, culling, and deduplication . . . are not taxable." *Id.* 171 n.11.

The level of "technical expertise" involved in "the activities leading up to the making of copies" is immaterial to the determination of whether the activity is taxable under § 1920(4). *Id.* at 169 (internal quotation marks omitted). *Race Tires* acknowledged that "extensive 'processing'" may be "essential to make a comprehensive and intelligible production" of ESI, requiring, among other things that "files . . . be transferred to different media for production." *Id.* We were explicit that the need for extensive processing "does *not* mean that the services leading up to the actual production constitute 'making copies.'" *Id.* (emphasis added). With respect to third-party ESI consultants, whose skills often entail a substantial fee, we cautioned that "[n]either the degree of expertise necessary to perform the work nor the identity of the party performing the work of 'making copies' is a factor that can be gleaned from § 1920(4)." *Id.*

In recent years, in light of growing concerns over the costs of ESI discovery, a number of our sister circuits have adopted this Court's approach of narrowly interpreting "making copies" under § 1920(4). *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 925–26 (9th Cir. 2015); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1333 (Fed. Cir. 2013) (differing from *Race Tires* with respect to metadata costs not at issue in the instant action); *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013). *But see Colosi v. Jones Lang LaSalle Ams., Inc.*, 781

F.3d 293, 296–98 (6th Cir. 2015) (agreeing with *Race Tires'* concerns about the scope of § 1920(4), while finding its "construction overly restrictive"). In the midst of this fairly uniform call for a narrow interpretation of § 1920(4), there is disagreement among the federal circuit courts on the specifics of what costs, such as TIFF conversion and character recognition, are recoverable. *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 131–32 (5th Cir. 2015) (acknowledging the growing split in the application of *Race Tires* without weighing in). The increasing attention to the scope of § 1920(4) and rising cost of ESI discovery requires that we fully understand the ESI charges at issue when determining whether these are taxable.

### 2. Application

*Race Tires* held that "only scanning and file format conversion can be considered to be 'making copies'" under § 1920(4).[7] 674 F.3d at 160. From the limited record, it is not readily apparent what ESI activities the charges at issue cover, or how these activities constitute either of the two applicable types of taxable costs identified in *Race Tires*. The District Court relied on two declarations from Peter Krill, a lead Case Manager for Kroll Ontrack, UPMC's ESI vendor, to find the charges taxable under prevailing law. (A-2). However, neither the declarations, nor the District Court's one-sentence statement that the declarations sufficed, shed much light on where these activities fall with respect to

---

[7] In *Race Tires* we also concluded that "the transfer of VHS tapes to DVD involved 'copying.'" 674 F.3d at 171. Since neither the facts, nor the parties, suggest that "Process to Ontrack Inview" implicates this activity, we only discuss the holding of *Race Tires* with respect to the scanning of hard copy documents and file format conversion. *See id.*

9

*Race Tires.* We find ourselves in the same position as the Ninth Circuit in a recent case which raised this issue. As the Ninth Circuit stated after adopting this Court's *Race Tires* approach, "[t]he record before us leaves us unable to resolve whether . . . [the] specific charges . . . are taxable under a narrow construction of § 1920(4)." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 931. Just as the Ninth Circuit did, we remand the issue to the District Court for its determination in the first instance.

The Camesi Named Plaintiffs assert that the ESI activities for which the District Court awarded costs, labeled on the invoices from Kroll Ontrack as "process to Ontrack Inview," fall under this Court's category of nontaxable pre-production costs. (Appellant's Br. 17) (citing *Race Tires Am., Inc.*, 674 F.3d at 169). Appellants contend the District Court erred in failing to meaningfully review UPMC's requested costs, and accepted the requested costs since they constituted only a fraction of UPMC's total ESI bill. (*Id.* at 19) (citing A-2). In their Brief in Support of Motion to Review Taxation of Costs, Appellants asserted that an evidentiary hearing was necessary to determine whether the vague descriptions of charges in Mr. Krill's declarations constituted recoverable costs under *Race Tires*. (A-107). Based on the declaration of the Camesi Named Plaintiffs' ESI expert, Peter Coons, Appellants describe the activities underlying the requested costs as "uploading data, hosting data . . . and reviewing it through Kroll Ontrack's review program, prior to production to the opposing party." (Appellants' Br. 17). Since UPMC never converted the requested ESI discovery to an agreed-upon format, nor scanned hard copy documents into a readable format for the Camesi Named Plaintiffs, they maintain

10

the charges for Ontrack Inview are not recoverable under this Court's interpretation of § 1920(4). (*Id.* at 17–18).

UPMC contends that it only requested costs for "digital duplication," which are recoverable under *Race Tires* as the "functional equivalent of making copies." (Appellee's Br. 15–16) (citing 674 F.3d at 171 n.11) (internal quotation marks omitted). Appellees cite the explicitly nonrecoverable costs under *Race Tires*, which they did not request, as evidence of how they "scrupulously followed" *Race Tires*. (*Id.* at 15). Citing courts applying *Race Tires* to allow for costs of scanning and converting electronic documents, UPMC asserts that the requested costs at issue are comparable. (*Id.* at 16).

Mr. Krill's declarations, which UPMC offered the District Court in support of its bill of costs, do not provide a sufficient description of the ESI activities involved for this Court to determine if they are taxable under *Race Tires*. The invoices Mr. Krill's declarations reference provide no clarification, as the requested costs are simply labeled "Process to Ontrack Inview." (A-168, A-170). In his first declaration, made in October 2013, Mr. Krill stated that the charge labeled "Process to Ontrack Inview" "was for the digital duplication of data from UPMC's systems onto Kroll Ontrack's system." The only clarification of what this entailed is the statement that "[e]ssentially, it involves electronically copying documents and data that UPMC had electronically stored." (A-171).

The supplemental declaration Mr. Krill executed in February 2014 largely restates his previous description of "Process to Ontrack Inview" and only expands on which activities the requested charges do not cover. (A-208–A-209). Referencing activities *Race*

11

*Tires* indicated are not taxable, Mr. Krill stated that "[n]one of the charges . . . are for 'imaging hard drives.' Nor are the 'Process to Ontrack Inview' charges the result of searching for, culling, preserving or de-duping electronic documents." (*Id*. at A-208). Mr. Krill also stated that the requested "charges do not represent a hosting fee and are not for database management." (*Id.*). Mr. Krill noted that Kroll did invoice UPMC for the abovementioned activities which *Race Tires* explicitly held are not taxable under § 1920(4), but did not request costs for these items. (*Id.* at A-209).

For the Camesi Named Plaintiffs, Mr. Coons' declaration asserted that "Process to Ontrack Inview" is a nonrecoverable processing cost based on the nature of the Ontrack Inview system. (*Id.* at A-175–A-177). Citing Kroll's own description of Ontrack Inview as of the time of his declaration, Mr. Coons stated that "Ontrack Inview is a software system developed and operated by Kroll Ontrack and is described by Kroll as a '. . . document review application [that] integrates advanced searching, categorizing, redacting, annotating . . . and more in one easy-to-use interface.'" (*Id.* at A-176) (first and second alterations in original). Based on his knowledge of Ontrack Inview and Mr. Krill's description of the charges in his initial declaration, Mr. Coons concluded that, "'Process to Ontrack Inview' refers exclusively to the intermediary steps taken to prepare collected ESI for attorney review within the Ontrack Inview electronic discovery review software system for the convenience of the producing party." (*Id.* at A-177). Mr. Coons supported his assessment by noting that, due to the Consent Order and the Order to Decertify, UPMC never actually produced any tangible discovery, in an electronic or hard copy format. (*Id.*).

12

UPMC's contention that "digital duplication," which it uses to describe the activities underlying "Process to Ontrack Inview," is the functional equivalent of making copies, is not supported by *Race Tires*. In *Race Tires*, we did not state that "digital duplication" is the "functional equivalent of making copies," despite UPMC's assertion. (Appellee's Br. 15–16) (quoting 674 F.3d at 171 n.11). The term "digital duplication" does not appear in *Race Tires*, nor have any of our sister circuits employed this term in the context of § 1920(4). As discussed *supra*, the term "digital duplicates" is used once in *Race Tires*, to refer to "the scanning of documents." 674 F.3d at 167.

As a description of one of the activities this Court held to be recoverable under § 1920(4), the term "digital duplicates" in *Race Tires* appears to refer to the act of copying material from a hard copy or a digital format to a readable format produced for the use of the requesting party. *Id.* Similar to the invoices at issue in *Race Tires*, Kroll Ontrack's invoices, as well as Mr. Krill's declarations, "are notable for their lack of specificity and clarity as to the services actually performed." *Id.* at 166. As with the invoice charges for "Process to Ontrack," the invoices in *Race Tires* included "thousands of dollars in charges for 'EDD processing,' without explaining what that activity encompasse[d]." *Id.* at 167. Mr. Krill's declarations do not demonstrate that the requested charges involved the creation of digital duplicates as contemplated by this Court in *Race Tires*. Mr. Krill did not assert that any ESI materials were scanned for the purposes of "converting computer data into a readable format in response to plaintiffs' discovery requests." *Id.* (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009)) (internal quotation marks omitted). Reviewing the record, we are not satisfied that the

13

vague and undefined term "digital duplication" falls under any of the activities this Court held taxable in *Race Tires*. *See* 674 F.3d at 167.

Our concern with the term "digital duplication" stems from this Court's distinction between taxable and nontaxable copying in the digital era, and UPMC's reliance on general, undefined terms to describe the activities underlying over $310,000 of costs. *Race Tires* acknowledged that while imaging hard drives, which is a form of copying from one electronic source to another to allow for searching and reviewing, is part of the "'processing' of ESI . . . essential to make a comprehensive and intelligible production," it does not constitute "making copies" for the purposes of § 1920(4). *Id.* at 169, 171 n.11; *see* Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 27 (Sherry B. Harris et al. eds., 3d ed. 2010) (defining "[t]o image a hard drive" as "to make an identical copy of the hard drive").

Even the term "scanning," as used in *Race* Tires, applied only to the "scanning of *hard copy* documents" as "making copies" for the requesting party. 674 F.3d at 171 (emphasis added). This is not necessarily the same as "scanning . . . UPMC's *electronic* documents" to digitally duplicate these on the Kroll Ontrack system for the benefit of the responding party, rather than to produce to the requesting party. (A-209) (emphasis added). Nothing in the record clearly states that the digital duplication of UPMC's records was to create a readable format for the Camesi Named Plaintiffs, rather than for UPMC's own review and benefit. It is not apparent if Appellants had access to these materials, or in what format they would have received the ESI discovery, if not for the stay and Consent Order.

14

Central to this Court's reasoning in *Race Tires* was that the prevailing party undertook the ESI activities for its own benefit and not to produce materials for the requesting party. *See Colosi*, 781 F.3d at 298 (citing *Race Tires*, 674 F.3d at 169) (stating that in "*Race Tires*, the prevailing party's reason for imaging its hard drives—to facilitate counsel's review of discoverable documents rather than to create the actual production—steered the Third Circuit's analysis"). Based on Mr. Krill's declarations, the requested charges for "digital duplication" seem to describe digitally moving all the ESI discovery Appellants requested from UPMC's system onto Kroll's system for review. UPMC does not assert, and Mr. Krill did not articulate, that the duplication at issue was to produce a readable format for Appellants' use, as contemplated by *Race Tires*. Without further information on what "Process to Ontrack Inview" entails, we are unable to confidently state that the charges requested are taxable costs under § 1920(4). The fact that "[UPMC has] requested a little more than one-third . . . of the total ESI services paid to their Vendor, Kroll Ontrack," as the District Court noted in denying Appellants' request to vacate to reduce the award of costs, is not dispositive of the taxable nature of these services. (A-2).

## III. Conclusion

We are well aware that district judges are often faced with multiple issues and it is sometimes difficult to know in advance what will be challenged on appeal. Nevertheless, as we cautioned in *Race Tires*, "[t]he highly technical nature of the services simply does not exempt parties who seek to recover their electronic discovery costs under § 1920(4) from showing that the costs fall within the subsection's limited allowance for 'the costs

15

of making copies of any materials.'" 674 F.3d at 170. For the foregoing reasons, we will vacate the District Court's order denying the Camesi Named Plaintiffs' motion to vacate or reduce the amount of costs awarded, and remand to the District Court for proceedings consistent with this foregoing opinion. We will not retain jurisdiction. The District Court may want to consider holding an evidentiary hearing or taking additional evidence to determine if these costs are taxable pursuant to our narrow construction of § 1920(4).