**JAVELER MARINE SERVICES LLC, Plaintiff,**

v.

**Villere CROSS and Matthews Marine, Inc. of Mississippi, Defendants.**

### CIVIL ACTION NO. 4:14-0670

United States District Court, S.D. Texas, Houston Division.

Signed March 30, 2016

Christopher Paul Hanslik, David L. Stockel, Boyar & Miller PC, Houston, TX, for Plaintiff.

Paul William Smith, Sagar Upendra Patel, Ware, Jackson, Lee & Chambers, LLP, Randall M. Foret, Fowler Rodriguez LLP, Houston, TX, Todd G. Crawford, Fowler Rodriguez, New Orleans, LA, for Defendants.

## MEMORANDUM AND ORDER

Nancy F. Atlas, United States District Judge

This case is before the Court on Defendant Matthews Marine, Inc. of Mississippi's ("Matthews Marine") Bill of Costs [Doc. # 70] and Defendant Villere Cross's ("Cross") Bill of Costs [Doc. # 71] (the "Bills of Costs"). Plaintiff Javeler Marine Services LLC ("Plaintiff" or "Javeler") objects to the costs in its Responses to the Bills of Costs [Docs. # 72, # 73] ("Plaintiff's Objections"). Matthews Marine filed a Reply [Doc. # 74]. After carefully considering the parties' briefing, all matters of record, and the applicable legal authorities, the Court **grants** Plaintiff Javeler's Objections in part. The Court holds that certain of Defendants' requested costs are not recoverable under 28 U.S.C. § 1920, and requires, as to other expenses, that Defendants submit supplemental material in support of their requests, as discussed in this Memorandum. Plaintiff Javeler may file a response to Defendants' supplements as ordered herein.

## I. BACKGROUND

Cross was employed by Javeler from September 2010 to January 2013. In January 2013, he left Javeler for a position at Matthews Marine. Javeler suspected that Cross took or accessed its confidential information after leaving its employ. Javeler further believed that it had suffered losses due to Cross and Matthews Marine's alleged use of that information. Javeler sued Defendants in this Court, seeking injunctive relief and damages under various tort and contract theories.[1]

In its Original Complaint and Application for Injunctive Relief and in a separate motion, each filed in March 2014, Javeler sought a temporary restraining order and preliminary injunction to prevent what it believed would be irreparable injury from Defendants' anticipated use of confidential information allegedly wrongfully taken by Defendant Cross from Javeler. *See* Doc. # 1, at 14–16, ¶¶ 55–59; Doc. # 3, at 15, ¶¶ 56–57. Javeler's focus throughout this case has been on putative confidential information from its files that Cross allegedly provided to Matthews Marine. The parties agreed that documents taken by Cross likely would be within Defendants' electronically stored information ("ESI") on various digital devices. The Court held an expedited conference with the parties on April 1, 2014.

---

1. For a more detailed description of the underlying facts of this dispute, see the Memorandum and Order [Doc. # 68] issued in this case on December 29, 2015.

All parties and the Court understood that preservation of all ESI on Defendants' hard drives and digital devices (collectively, "Defendants' devices") was of paramount concern to proof of the claims and some of the defenses. The Court accordingly directed the parties to retain a neutral third-party forensic expert to create a forensic electronic image of all Defendants' devices. This imaging process enabled the parties promptly to replicate completely and accurately all ESI (documents and metadata) in existence on Defendants' devices close in time to inception of the lawsuit, and enabled Defendants thereafter to use their devices for ongoing business. The Court accordingly directed that the replicated versions of the data be stored on separate hard drives that could be accessed as needed for the litigation. Discovery proceeded on the forensic copies of the ESI.

Pursuant to the Court's directive, the parties entered into an Agreed Protocol for Review of Forensic Images (the "Protocol"). Exhibit A to Cross's Bill of Costs [Doc. # 71-2]. The parties hired Avansic, Inc. ("Avansic"), an electronic discovery and digital forensics firm, to image Defendants' devices completely and handle discovery requests from the parties. In accordance with the terms of the Protocol [Doc. # 71-2], at 12, ¶¶ 1–2, Defendant Matthews Marine provided seven hard drives and Cross produced one flash drive to Avansic for imaging. Avansic created a forensic image (a complete, accurate replica) of all the ESI on each of these devices.

The Protocol also required the parties to agree on search terms for Avansic to use to locate potentially responsive documents and data in the replicated version of the ESI. Avansic performed the search and Defendants reviewed the responsive materials to cull out privileged matter. Defendants then produced a copy of the non-privileged responsive ESI to Javeler. *See* Protocol [Doc. # 71-2], at 2, ¶¶ 3–4 (defining "Responsive Data" as any data responsive to the agreed keywords and search terms). The Protocol further directed that Avansic would "use reasonable forensic search protocols and tools ... to locate ... evidence of attempted spoliation or deletion of Responsive Data (which constitutes Responsive Data hereunder)." *Id.*, at 2, ¶ 4.

The parties agreed pursuant to the Protocol to share equally the costs of the electronic forensic work. *Id.*, at 3, ¶ 8. The Protocol provided, however, that "[s]uch equal allocation of costs does not preclude any party from petitioning any court hearing this case to seek an equitable adjustment of the cost allocations following the completion of the forensic examination." *Id.*

The Court denied Plaintiff Javeler's motion for a temporary restraining order and Defendants' motions to dismiss. *See* Memorandum and Order [Doc. # 38]. Discovery proceeded and Defendants timely filed motions for summary judgment. On December 29, 2015, the Court granted summary judgment in favor of Defendants. *See* Memorandum and Order [Doc. # 68]. The Court concluded that several of Plaintiff's claims were without basis in law. Regarding the rest of the claims, Plaintiff failed to raise a genuine issue of material fact that any alleged misuse of its confidential information by Defendants caused a cognizable injury.

As prevailing parties, Defendants now seek to recover from Plaintiff Javeler costs taxable under 28 U.S.C. § 1920, for (1) Defendants' portions of Avansic's fees for electronic forensic work, (2) photocopies of tangible documents, and (3) postage. Plaintiff primarily challenges the costs for work performed by Avansic. Defendants represent that they each paid Avansic approxi-

mately $8,000 in fees and contend those all are taxable costs under under § 1920(4).[2]

## II. LEGAL STANDARD

■ Rule 54(d) of the Federal Rules of Civil Procedure states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." By statute, however, federal courts may award only those costs itemized in 28 U.S.C. § 1920, absent explicit statutory or contractual authorization to the contrary. *Taniguchi v. Kan Pac. Saipan, Ltd.*, — U.S. —, 132 S.Ct. 1997, 2001, 182 L.Ed.2d 903 (2012); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (explaining that the statute "impose[s] rigid controls on cost-shifting in federal courts"); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010).

■ Under § 1920, a court may tax only the following costs: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of materials necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts, interpreters, and special interpretation services. *See* 28 U.S.C. § 1920. The Court must give "careful scrutiny" to the items proposed by the prevailing party. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir.1995) (citing *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964)); *Serling v. Am. Airlines, Inc.*, 237 Fed.Appx. 972, 976 (5th Cir.2007).

■ The Court must consider the necessity and reasonableness of the costs requested. *See, e.g., Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257–58 (5th Cir.1997) (rejecting costs application for plaintiffs' witnesses depositions; depositions were surplusage and not reasonably necessary under the circumstances). Inability to pay may be considered in some instances, such as where a plaintiff is "of such modest means that it would be unjust or inequitable" to enter a cost award. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 447 (4th Cir.1999).

---

2. The Southern District of Texas provides a standardized form for bills of costs. *See* Form No. AO 133, *available at* http://www.uscourts.gov/forms/other-forms/bill-costs-district-court (last accessed Mar. 21, 2016). The form consists of a list of items that correspond to the categories of recoverable costs listed in the statute that authorizes taxation of costs. *Compare id., with* 28 U.S.C. § 1920. Defendants included their requests for electronic discovery costs on the line for "other costs." *See* Bills of Costs [Docs. # 70, # 71]. Despite the form's instruction to "please itemize" any costs in the "other" category and the general directive to "[a]ttach to your bill an itemization and documentation for requested costs in all categories," both Defendants simply requested the lump sum of their respective shares of Avansic's costs. *See* Matthews Marine's Memorandum in Support of Bill of Costs [Doc. # 70], at 2; Cross's Memorandum

in Support of Bill of Costs [Doc. # 71-1], at 2. The Bills of Costs' itemizations therefore do not correspond to the Avansic invoice, on which the apparent electronic discovery costs total $20,050 for "On-site data collection [Per Hour]," "Destination Media," and "De-NIST Data Filtering, Report Export [Per GB]." *See* Avansic Invoice dated July 31, 2014 [Doc. # 71-3], at ECF page 4. Nor do the Bills of Costs explain these categories. These fees do not include shipping expenses that Avansic also charged. *See id.* (listing two items for "FedEx Shipment," which total $539.36).

The parties also each appear to have paid Avansic a retainer of $1,000. *See* Avansic Invoice dated June 17, 2014 [Doc. # 71-3], at ECF page 1. Defendants request compensation for these retainers in addition to the sums listed on Avansic's July 31, 2014 Invoice.

## III. ANALYSIS

The bulk of the costs for which Defendants seek reimbursement are Avansic's fees. From the parties' briefing, it appears these fees fall into three categories for analysis: (1) creation of a forensic image of the ESI on Defendants' computer hard drives and a thumb drive, (2) executing keyword searches in the forensic images, and (3) costs for other unspecified tasks related to the production of ESI. For reasons explained below, the Court concludes generally that creating forensic images of Defendants' devices and conversion of the relevant imaged copies to TIFF format are within the rubric of "making copies of any materials" under § 1920(4) in this case, but are taxable costs only upon a showing they were "necessarily obtained for use in the case." The information of record is insufficient to determine what other electronic copying tasks were performed or whether any of them were necessary for use in the case. The Court holds also that § 1920(4) does not authorize taxation of expenses attributable to keyword searches. The Court also requires further information regarding what traditional photocopying was performed and the necessity of those copies for the case. Defendants' requests for postage are rejected as outside the scope of § 1920.

### A. Electronic Discovery Costs as Taxable Costs

Defendants seek reimbursement of their electronic discovery costs pursuant to 28 U.S.C. § 1920(4), which permits recovery of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use

in the case." The dispute here is about each of the two requirements of § 1920(4): (i) what costs were incurred by Defendants "making copies" of "any materials"; and (ii) whether those copies were "necessarily obtained for use in the case." The analysis of each requirement must be separate in order to apply the statute in light of complexities of electronic discovery.

#### 1. Forensic Images of Hard Drives

##### a. "Making Copies" of "Materials"

***Background Information on Imaging Electronic Storage Devices.***—Electronic discovery is challenging because ESI "is volatile—easily deleted, modified, copied, or lost." JAY E. GRENIG & JEFFREY S. KINSLER, HANDBOOK OF FEDERAL CIVIL DISCOVERY AND DISCLOSURE: E-DISCOVERY AND RECORDS § 3:2 (2015). "Electronically stored information can be altered, overwritten or destroyed simply by running conflicting software or by conducting routine maintenance." *Id.*, § 8:5. A summary of some accepted electronic discovery terminology and best practices is helpful to application of § 1920(4) to Defendants' requests for taxation of the costs of imaging their devices.

The Sedona Conference, a nonprofit legal policy organization that sponsors working groups composed of experts, has published commentaries on and guidelines for electronic discovery that have been widely relied on by U.S. courts.[3] The members of the Working Group on Electronic Document Retention & Production reached consensus on definitions of certain concepts significant to discovery of electronically stored information. The Court finds the

---

3. *See, e.g., Romero v. Allstate Ins. Co.,* 271 F.R.D. 96, 106 (E.D.Pa.2010) ("To resolve disputes regarding the production of metadata, many courts have turned to the Sedona Principles and Sedona Commentaries thereto, which are 'the leading authorities on electronic document retrieval and production.' " (quoting *Ford Motor Co. v. Edgewood Props., Inc.,* 257 F.R.D. 418, 424 (D.N.J.2009))); *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,* 256 F.R.D. 134, 136 (S.D.N.Y.2009) ("This Court strongly endorses *The Sedona Conference Cooperation Proclamation.*")

following definitions instructive for the application § 1920(4) to the creation of forensic images of ESI:

> **Forensic Copy**: An exact copy of an entire physical storage media (hard drive, CD-ROM, DVD-ROM, tape, etc.), including all active and residual data and unallocated or slack space on the media. Forensic copies are often called images or imaged copies.
>
> **Image**: ... To make an identical copy of a storage device, including empty sectors. Also known as creating a mirror image or mirroring the drive.
>
> **Metadata**: The generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file.[4]
>
> **Slack/Slack Space**: The unused space that exists on a hard drive when the logical file space is less than the physical file space. Also known as file slack. A form of residual data, the amount of on-disk file space from the end of the logical record information to the end of the physical disk record. Slack space can contain information soft-deleted from the record, information from prior records stored at the same physical location as current records, metadata fragments and other information useful for forensic analysis of computer system.

The Sedona Conference, *The Sedona Conference Glossary: E-Discovery and Digital Information Management*, at 19, 25, 29, 42–43 (Sherry B. Harris & Paul H. McVoy eds., 4th ed. 2014), *available at* https://thesedonaconference.org/download-pub/

3757 [hereinafter *"Sedona Glossary"*], cited in *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed.Cir. 2013).

Imaging electronic storage devices is an essential tool among electronic discovery techniques because it preserves data without disturbing its content and associated metadata. Electronic information will be copied precisely as it exists on the storage device at the time the image is made. Also, "[t]he information contained in temporary and swap files may be lost if the computer is operated without first making an image copy of the hard drive." *Id.*, § 1:24.[5] Therefore, "[s]ome preservation issues may require an immediate implementation of hard drive mirror imaging for key players by a forensic expert." *Id.*, § 6:9. Imaging hard drives is an efficient alternative "to actually going on site to search a ... party's system." *Id.*, § 4:26. "In general, it is good practice to make two image disks: one to be used for expert review and the other to be write-protected and stored in a safe place as a control copy so that a chain of custody can later be established." *Id.*, at § 1:55. Imaging has therefore been recognized as a method by which a party may fulfill its obligation to preserve documents at the commencement of litigation. *See, e.g., Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y.2003).

The imaging process also produces a forensic record that may have probative value. For example, imaging, which is more thorough than the ordinary process of copying files, not only collects electronic documents stored on the device, but may

---

**4.** For additional information regarding the creation, content, and function of metadata, *see* Comment 3.f in the Sedona Conference's publication on best practices for electronic records. *The Sedona Guidelines: Best Practice Guidelines & Commentary for Managing Information & Records in the Electronic Age*, at 28–30 (Lori Ann Wagner et al. eds., 2d ed. 2007),

*available at* https://thesedonaconference.org/download-pub/74.

**5.** A "swap file" is "[a] file used to temporarily store code and data for programs that are currently running. This information is left in the swap file after the programs are terminated, and may be retrieved using forensic techniques." *Sedona Glossary*, at 44.

also capture deleted files that have not yet been overwritten. GRENIG & KINSLER, § 1:55 (noting that "a mirror or 'image' copy of the disk must be made" to preserve deleted data because a simple copy of the disk and most commercial backup programs will not capture such data). As Grenig and Kinsler explain, "[t]he mere fact that certain files have been deleted may prove to be more valuable information than the content of the actual files recovered, especially if the attempted deletion evidences bad faith or some other improper motive. The deletion of large numbers of files, when such activity is not the norm, can be detected using forensic computer software and may provide circumstantial evidence of a party's guilty knowledge." *Id.* Other district courts have therefore ordered imaging hard drives in cases involving alleged misappropriation of confidential information because "[h]ow and whether defendants handled [such] documents and what defendants did with the documents" are at issue. *See Genworth Fin. Wealth Mgmt. v. McMullan*, 267 F.R.D. 443, 447 (D.Conn. 2010) (quoting *Ameriwood Indus., Inc. v. Liberman*, No. 4:06 CV 524–DJS, 2006 WL 3825291, at *5 (E.D.Mo. Dec. 27, 2006)).

■ *Is ESI on an Electronic Storage Device Within "Any Materials"?*—Defendants seek compensation for Avansic's fees for making a forensic image of each of Defendants' devices. The longstanding version of § 1920(4) permitted parties to recover costs for "[f]ees for … *copies* of *papers* necessarily obtained for use in the case." 28 U.S.C. § 1920(4) (2007) (emphasis added). To address confusion among courts and litigants about whether ESI was included, Congress amended § 1920(4) in 2008 in the Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–406, § 6(2), 122 Stat. 4291, 4292. Congress replaced "copies of papers" with the phrase "the costs of making copies of any materials." The legislative history reveals that Congress intended this

amendment to reflect the use of electronic documents in contemporary litigation. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1326–27 (Fed.Cir.2013) (summarizing legislators' statements and committee reports).

The parties disagree about whether the cost of imaging the entire storage on Defendants' digital devices falls within the scope of the statutory phrase "making copies of any materials" in § 1920(4). More specifically, however, the parties' battle is over whether the creation of a forensic image is "making copies" under § 1920. This issue is addressed in the next section of this Memorandum.

There appears no dispute that all ESI in Defendants' devices fits within the term "any materials" in § 1920(4). The plain meaning of the term "any materials" is sufficiently expansive to include the contents of hard drives. *See, e.g., "Material,"* BLACK'S LAW DICTIONARY (10th ed. 2014) ("Information, ideas, data, documents, or other things that are used in reports, books, films, studies, etc."); *Material*, OXFORD ENGLISH DICTIONARY ONLINE (2016) (defining the noun "material" as, *inter alia* "[t]ext or images in printed or electronic form" or "[f]acts, information, evidence, etc., on which a conclusion is based, or from which an idea is developed"). The Court therefore finds that the ESI on Defendants' devices is encompassed by the term "any materials" in § 1920(4).

■ *Is a Forensic Image a "Copy" Under § 1920(4)?*— The "making copies" phrase is the center of a key disagreement in this case. As noted, Defendants seek compensation for Avansic's fees for making a forensic image of each of Defendants' devices. Taxability of costs for making an exact replica of ESI, *i.e.*, a forensic image, of data in an electronic storage device such as a hard drive, thumb drive or other electronic storage medium, has challenged the courts. In the 2008 amendments to

§ 1920(4), Congress did not enumerate precisely which electronic "copying" costs were encompassed by the amendment. *See CBT Flint,* 737 F.3d at 1326. A seminal inquiry under § 1920(4) is therefore the meaning of "copies" in the digital world. The Fifth Circuit has not squarely addressed whether the phrase "making copies" encompasses the initial imaging of a party's hard drive or digital device for later use in discovery. *United States ex rel. Long v. GSDMIdea City, L.L.C.,* 807 F.3d 125, 131-31 (5th Cir.2015) (declining to resolve "disagreement" among courts regarding whether certain electronic imaging costs are taxable).

Consistent with the Supreme Court's guiding principle expressed in *Taniguchi* that § 1920 should be applied according to the "ordinary meaning" of its terms, *see* 132 S.Ct. at 2002, 2006, 2007, the Court must first ascertain the applicable definition of "copy." The *Merriam-Webster Dictionary*'s simple definition of "copy" is "something that is or looks exactly or almost exactly like something else: a version of something that is identical or almost identical to the original." *Copy,* MERRIAM-WEBSTER DICTIONARY ONLINE (2016), http://www.merriam-webster.com/dictionary/copy (last accessed Mar. 21, 2016). This definition of "copy" is consistent with those in other established dictionaries. *See, e.g., Copy,* BLACK'S LAW DICTIONARY (10th ed. 2014) ("An imitation or reproduction of an original."); *Copy,* OXFORD ENGLISH DICTIONARY ONLINE (2016) ("transcript or reproduction of an original"; "[s]omething made or formed, or regarded as made or formed, in imitation of something else; a reproduction, image, or imitation").

The Court concludes that creation of forensic images of Defendants' electronic storage devices constituted "making copies" according to the plain language of § 1920(4). Imaging a hard drive involves creating a "functional reproduction of the physical storage disk." *Colosi v. Jones Lang LaSalle Americas, Inc.,* 781 F.3d 293, 297 (6th Cir.2015), *cited with approval on other grounds in GSDMIdea City,* 807 F.3d at 131-32; *Nucor Corp. v. Bell,* 251 F.R.D. 191, 200 (D.S.C.2008) (noting that "many authorities—including the Sedona Conference—recognize [imaging] as a reliable tool for making an exact copy of a hard drive"). A user can access, on a forensic image of a hard drive, "any application file or electronic document on the [original] hard drive with all that document's original properties and metadata intact." *Colosi,* 781 F.3d at 297 (citing *CBT Flint,* 737 F.3d at 1329-30); *Equity Analytics, LLC v. Lundin,* 248 F.R.D. 331, 334 (D.D.C.2008) ("[A] mirror image is a perfect duplication of the hard drive and ... it is physically impossible for the mirror image to contain anything the hard drive does not and for there to be anything on the mirror image that is not on the hard drive."). It is impossible to discuss the process of imaging a hard drive without using the term "copy" or its synonyms.[6] The Sixth Circuit in *Colosi,* citing the *Sedona Glossary,* therefore held that "a plain reading of [§ 1920(4)] authorizes courts to tax the reasonable cost of imaging [as a 'copy'], *provided* the image file was necessarily obtained for use in the case." 781 F.3d at 297 (6th Cir.2015) (emphasis added). This Court thus generally adopts the approach taken by the Sixth Circuit.[7]

---

6. The Court notes, too, that the *Oxford English Dictionary* also includes a specialized definition of the verb "to copy" for computing: "To read (data stored in one location), or the data in (a disc, etc.), and reproduce it in another."

7. Plaintiff suggests that *Colosi* should be limited to its facts and is not probative authority. The Court disagrees. The *Colosi* court's overriding conclusion is persuasive. The court held that the initial imaging, *i.e.,* creation of an exact copy, of a hard drive containing

The Court is aware of rulings by the Third, Fourth and Federal Circuits concerning whether the costs of imaging a hard drive are taxable. The Federal Circuit, applying Eleventh Circuit law, concluded that a portion of the costs for creating the forensic image may be taxable, *CBT Flint*, 737 F.3d at 1329, while the Third and Fourth Circuits reached the opposite conclusion. *See Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir.2013); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167–170 (3d Cir.2012); *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 818 F.3d 132, 140 (3d Cir.2016) (non-precedential opinion). These decisions are not binding in the Fifth Circuit, but warrant discussion.

It appears that the parties in these cases generally did not focus on the issue of imaging the hard drive *per se. See CBT Flint*, 737 F.3d at 1325 (noting that the prevailing parties each listed their electronic discovery costs "in a catch-all 'other' category" on their respective bills of costs); *Race Tires*, 674 F.3d at 166–67 ("The invoices ... submitted in support of the[ ] Bills of Costs are notable for their lack of specificity and clarity as to the services actually performed").[8] While commenting on imaging in passing, these courts of appeals did not closely evaluate the precise question of whether the discrete acts of imaging hard drives constitute "making copies." *See* 674 F.3d at 167–68.

Rather, these courts of appeals analyzed the taxability of electronic discovery costs through the lens of which electronically stored documents ultimately were produced in discovery and whether the format and properties of the produced documents were beneficial to the requesting party. These courts also distinguished what they referred to as preparatory tasks from the ultimate discovery task of "making copies" of responsive documents for production.[9] This approach essentially blends the first

---

potentially relevant ESI can be a taxable cost. The dispositive issue of recoverability of forensic imaging costs, however, turns on whether the imaged copy is "necessarily obtained for use in the case." The facts that Plaintiff asserts distinguish *Colosi* from the case at bar were the particular reasons that imaged copies were needed. This distinction is relevant to the "necessity" prong of the § 1920(4) test. That prong is separate from the "making copies" prong, and will be addressed by the Court later in this Memorandum. *See infra* Section III.A.1.b.

8. The appellant in *Race Tires* opposed taxation of forensic imaging costs on grounds that appear to relate to the necessity prong of § 1920(4). *See* Brief of Appellants at 31, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (2012) (No. 11–2316) (explaining that no "copies of hard drive images were produced, and for good reason," because the image would include software programs and the computer's operating system, as well as deleted files, music and pictures, and obviously, many irrelevant files"). Similarly, parties advocating taxation of forensic imaging costs focused on the necessity of forensic imaging to the creation of accurate copies of individual documents. *See, e.g.*, Brief of Appellee, 2013 WL 1741921, *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320 (Fed.Cir. 2013) (No. 13–1036) ("It would be equally odd to hold that the costs associated with the process of scanning and OCR-ing a hard copy document to produce it electronically are recoverable, but that the costs incurred in imaging a hard drive or network drive and undertaking the *necessary* processing tasks to make a digital duplicate of that same document (which already exists in electronic form) are not." (emphasis added)).

9. The *Race Tires* court ruled in response to the prevailing parties' undifferentiated requests for recovery of the cost of the entire electronic discovery process. The Third Circuit perceived the creation of a forensic image was within the swath of discovery "preparatory tasks," that is, tasks analogous to "the steps that preceded the actual act of making copies in the pre-digital era," such as locating files, travel to the storage facility, and review of documents, and held those costs would not "have been considered taxable." 674 F.3d at 169. The Fourth Circuit in *Country Vintner* adopted the Third Circuit's reasoning. *See* 718

§ 1920(4) issue of whether a "copy" was made with § 1920(4)'s second requirement that the copies be "necessarily obtained for use in the case."[10] This Court therefore parts with the Federal Circuit's ruling insofar as it concluded in *CBT Flint* that prorating forensic images is appropriate when discussing what constitutes "copying."

■ *Conclusion on Forensic Imaging Electronic Storage Devices as "Making Copies of Any Materials."*— This Court therefore holds that creation of the forensic images of Defendants' eight devices constituted "making copies of materials" under § 1920(4). *Accord Jo Ann Howard & Assocs. v. Cassity*, 146 F.Supp.3d 1071, 1083 (E.D.Mo.2015) (holding that making copies may include "the imaging of computer storage drives, the transfer of files from one drive or disc to another, . . . and the extraction or imaging of metadata

where required to provide a complete copy of a file," and other tasks, but not Bates numbering because that latter process "can in no way be construed as 'making copies' within the plain language of § 1920(4)"); *CSP Techs., Inc. v. Sud–Chemie AG*, No. 4:11–cv–0029–RLY–WGH, 2015 WL 2405528 (S.D.Ind. May 20, 2015) (parsing request for taxation of electronic discovery costs by task, denying in part and granting in part, including granting request for "cost of image/file copies" (citing *CBT Flint*, 737 F.3d at 1333)). The taxability of these imaging expenses, however, also depends on whether the copies were "necessarily obtained for use in the case," an inquiry the Court addresses next.

### b. "Necessarily Obtained for Use in the Case"

■ The "necessarily obtained" prong addresses concerns regarding undue ex-

---

F.3d at 260. While the Federal Circuit in *CBT Flint* decided that imaging was not a preparatory task, that court found imaging to be a component of the process of "making copies" of electronic documents only to the extent the ESI was ultimately produced in discovery. For that reason, in discussing the element of "making copies," the Federal Circuit directed the district court to find taxable only the prorated cost of imaging the ESI to the extent the images were of documents actually produced in discovery. *See* 737 F.3d at 1330.

The Third Circuit recently reaffirmed its *Race Tires* approach in *Camesi*, 818 F.3d 132. Regarding forensic imaging, the *Camesi* court explained, "while imaging hard drives, which is a form of *copying* from one electronic source to another to allow for searching and reviewing, is part of the 'processing of ESI . . . essential to make a comprehensive and intelligible production,' *it does not constitute 'making copies'* for the purposes of § 1920(4)." *Id.*, at 140 (emphasis added) (quoting *Race Tires*, 674 F.3d at 169). This result, in which "copying" does not constitute "making copies," appears to be inconsistent with the Supreme Court's directive that § 1920 should be applied according to the "ordinary meaning" of its

terms. *See Taniguchi*, 132 S.Ct. at 2002, 2006, 2007.

10. It is possible that these courts of appeals construed the term "any materials" in the first requirement of § 1920(4) to include only the electronic versions of the documents that were ultimately produced. This Court does not find that analysis persuasive. As noted above, creation of forensic images of electronic storage media constitutes "making copies of any materials" because the relevant "material" for forensic images purposes is the entire content of the electronic storage device. This conclusion is warranted because the literature regarding electronic discovery establishes that imaging is a wholesale replication of a device's ESI, including information indicating when an electronic document was modified, slack space, and deleted files that have not been overwritten. *Sedona Glossary*, at 19 (defining "forensic copy" as "[a]n exact copy of an *entire* physical storage media . . ., including *all* active and residual data and unallocated or slack space on the media" (emphasis added)); *see also* GRENIG & KINSLER § 1:55 (explaining that imaging creates a forensic record of activity on the hard drive that may have independent evidentiary value).

pansion of the scope of taxation of electronic discovery costs. *Cf. Crawford*, 482 U.S. at 444, 107 S.Ct. 2494 (noting that the original version of § 1920 ended a practice of saddling losing litigants with "exorbitant fees" and that Congress intended to "impose rigid controls on cost-shifting in federal courts"). At this second step, the Court can examine whether the circumstances of the case and electronic discovery best practices warrant using imaging instead of less expensive techniques. To recover as taxable under § 1920(4) any imaging costs, Defendants must explain under oath specifically why this task was "necessarily obtained for use in the case." As noted above, the vast majority of Defendants' requested costs are lumped together in the Avansic invoice. *See supra* footnote 2. The Court is unable to ascertain with precision which electronic discovery expenses were for copies that were "necessarily obtained for use in the case."

The Court, however, recognizes generally that in this case there was a need for immediate creation of forensic copies of Defendants' devices to enable the parties to ascertain the scope and degree, if any, of Defendant Cross's unauthorized copying and of each Defendant's unauthorized use of Plaintiff's proprietary information, bids, and processes. Evaluation of ESI in its original state in Defendants' devices was necessary for discovery on Javeler's claims and Defendants' defenses.[11] There also was plainly a business need for Defendants' continued use and custody of their computers and other electronic devices. These observations have established a *prima facie* showing that forensic images of Defendants' eight devices were necessary for use in this litigation. But this observation is

not a final finding. *See supra* Section III. A.1, at 11–15 (discussing best practices in electronic discovery).

### 2. Keyword Searches

■ Defendants' request for reimbursement for the keyword searches executed by Avansic is denied. That work comprises tasks outside the term "making copies" as used in § 1920(4). Performing searches identifies relevant files or documents but it does not itself result in the creation of a copy of the materials. *See CBT Flint*, 737 F.3d at 1331 ("The provision covers only 'making copies.' Although the requester's demands can define the number, form, and other characteristics of copies chargeable under section 1920(4), the requester's demands for activities other than making copies does not bring those non-copying activities within the provision."); *Race Tires*, 674 F.3d at 170 ("Just as the cost of reviewers examining documents is not taxable, so too the task of keyword searching is not taxable."). Expenses for computer searches cannot be taxed as costs under § 1920(4). The Court therefore sustains Plaintiff's objection to Defendants' request for compensation for their expenditures on keyword searches as taxable costs because searches are not within the scope of "making copies" under § 1920(4).

### 3. Format Conversion and Other Forensic Tasks Performed on Imaged ESI

Defendants have provided no itemization or explanation of the tasks included on the Avansic invoices. Indeed, approximately 90% of the electronic discovery expenses sought by Defendants are referenced incomprehensibly by Avansic in its July 31,

---

11. Because this suit was filed fourteen months after Cross left Javeler and started at Matthews Marine, and because the initial conference was not held until two weeks thereafter, the Court perceived a possibility that Ja-

veler documents may been downloaded to Matthews Marine's computers and deleted or removed before the imaging, thereby necessitating a forensic copy of all ESI.

2014 invoice as "De-NIST, Date Filtering, Report Export [Per GB]—WO23642" ($18,300.00) [12]

*"Making Copies of Any Materials."*— Without itemization and explanation, the Court cannot rule whether any of the balance of expenses constitute "making copies of any materials" under § 1920(4). *See, e.g., eBay Inc. v. Kelora Sys., LLC*, No. C 10–4947 (LB), 2013 WL 1402736, at *4 (N.D.Cal. Apr. 5, 2013) ("In sum, with ESI, vaguely-worded vendor invoices and a declaration that such services were necessarily incurred may not satisfy the prevailing party's burden to show that the ESI is the electronic equivalent of compensable exemplification and copying."). Similarly, the "retainers" allegedly paid by Defendants to Avansic, *see* Invoice dated June 17, 2014 [Doc. # 71-3], are unexplained and are not shown to be taxable costs as "making copies."

To the extent Avansic's fees include charges for conversion of files to a particular format, *see* Cross's Memorandum of Law [Doc. # 71-1], at 3, 4 (mentioning conversion of files as part of the digital forensics tasks in this case), those costs may be recoverable under § 1920(4), provided they are shown to have been necessary for use in the litigation. The Fifth Circuit has held that § 1920(4) includes fees for conversion of computer files to a particular electronic format for production. *Long*, 807 F.3d at 131–32 (affirming award of costs for TIFF conversion and optical character recognition).

*"Necessarily Obtained for Use in the Case."*—The Court cannot determine the necessity of the tasks other than forensic imaging or keyword searches without detailed explanation of the nature of each task and its importance to the litigation.

To obtain reimbursement for any electronic copying costs, Defendants must submit from Avansic an explanation in admissible evidentiary form specifying each type of electronic discovery task, and enumerating of the fees and expenses associated with each task, respectively. The descriptions must explain the nature and necessity of these tasks in light of the Court's rulings in this Memorandum and Order.

### 4. Equitable Adjustment Under the Protocol

■ The parties agreed to share equally the costs of the electronic forensic review, but preserved the right to seek an "equitable adjustment of the cost allocations following the completion of the forensic review." Protocol [Doc. # 71-2], at 3, ¶ 8. A contractual agreement to share costs that would otherwise be taxable under § 1920 can preclude an award of those costs to the prevailing party. *Thomas v. Duralite Co.*, 524 F.2d 577, 590 (3d Cir. 1975). If the parties entered into such an agreement merely as an interim measure, however, the Court may reallocate taxable costs at the termination of litigation in favor of the prevailing party. *In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1366 (Fed.Cir.2011) ("There is no indication in any of the extensive communications between the parties that they intended this cost-sharing agreement to be anything other than a final settlement of the cost of the ... database." (citing *Thomas v. Duralite Co.*, 524 F.2d 577 (3d Cir.1975))); *cf. Monsanto Co. v. David*, 516 F.3d 1009, 1017 (Fed.Cir.2008) ("28 U.S.C. § 1920 does not set maximum costs around which private parties may not contract.... Thus, the costs agreed to in the Technology Agreement are enforceable, even though those costs exceed the costs recoverable under § 1920.").

12. The other expenses are for Federal Express shipments ($539.36), "On-site data collection [Per Hour]" ($1,150.00), and "Destination Media" ($600.00).

Here, the parties' preservation of the right to seek an equitable adjustment indicates that the Protocol's cost-sharing provision was an interim measure. By agreement of the parties, the Protocol permits the Court to make an "equitable adjustment" of expenses found to be taxable for copying performed as part of Avansic's work. If specifically requested, the Court will determine a fair allocation of costs after decision on the taxability of expenses reflected in the Bills of Costs.

### B. Photocopying

Plaintiff also objected to Cross and Matthews Marine's requests for taxation of certain photocopying expenses on the ground that Defendants did not make the requisite factual showing of necessity to the litigation. Response to Matthews Marine's Bill of Costs [Doc. # 72], at 5–6 n.9; Response to Cross's Bill of Costs [Doc. # 73], at 5–6 n.9. The Court agrees that the proof is insufficient in this regard. Defendants may address these requests in the supplemental briefing and affidavits.

### C. Postage

Plaintiff objects to Defendants' requests for reimbursement of miscellaneous postage expenses. *See* Matthews Marine's Memorandum of Law in Support of its Bill of Costs [Doc. # 70], at 2 (ECF page 4) (requesting award of $80.49 for postage expenses); Cross's Memorandum of Law in Support of its Bill of Costs [Doc. # 71-1], at 2 (requesting $24.50 in postage expenses). These items were included only in Defendants' Memoranda of Law and not in Defendants' Bills of Costs. *See* Matthews Marine's Bill of Costs [Doc. # 70], at ECF page 1; Cross's Bill of Costs [Doc. # 71], at ECF page 1. The Avansic invoice also includes Federal Express shipping charges. Plaintiff is correct that postage expenses are *not* recoverable under 28 U.S.C. § 1920. *See, e.g., Embotelladora Agral Regiomontana, S.A. de C.V. v.*

*Sharp Capital, Inc.*, 952 F.Supp. 415, 418 (N.D.Tex.1997). The same considerations apply to shipping fees such as Federal Express charges. Defendants' requests for postage and Federal Express charges are denied.

### IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that Defendants Matthews Marine and Cross may well be entitled to recover certain copying costs under § 1920(4), but the factual record is insufficient for the Court to determine the taxable recoverable amount. It is therefore

**ORDERED** that on or before **April 12, 2016**, Defendants Matthews Marine, Inc. of Mississippi and Villere Cross must submit in support of their requests for taxable costs revised Bills of Costs admissible evidence and briefing that detail meaningfully the facts necessary for the Court to apply the principles and rulings in this Memorandum and Order. It is further

**ORDERED** that Plaintiff may submit a response to Defendants' supplements on or before **April 22, 2016**.